### COURCIER AND RAVISES v. THOMAS GRAHAM.

*Pleading—Title—Evidence.*

Covenants independent, dependent and mutual.

The plea of *non est factum* puts nothing in issue but the execution of the deed.

Upon default, plaintiff in covenant is not bound to prove the averments of his declaration.

When deed may be presumed.

Complete connected paper title is necessary where a party covenants to make an indisputable title.

A deed attested by one witness does not convey title.

The value of merchandise agreed upon by the parties can not be controverted where fraud is not alleged.

---

THIS was an action of covenant, founded upon an article of agreement executed on the 26th day of March, 1818, for the sale of a tract of land particularly described and upon particular terms.

The plaintiff stipulated to deliver to the defendant merchandise

to the amount of $11,418.32, upon account of the purchase of the land; and from time to time, when thereto required, within one year from the date, to deliver to the defendant or his order any further quantity of merchandise, as he or his agent might select, to the amount of ―――― dollars, further on account of the land.

The price of the land was to be fixed by three persons living in Cincinnati, to be chosen by the parties within six months; Graham covenanted that if he approved the price fixed he would, at the end of one year from the date, by a good and sufficient deed of conveyance and assurance in the law, well, and sufficiently, grant, convey, and assure the land to the plaintiffs, in fee simple, **331**] clear of all incumbrances, and *at the *same time deliver the possession of the premises to them*, they securing to be delivered on demand to the defendant, or his order, such goods suitable to the Cincinnati market, at a fair price, as he may choose, to the amount of any difference beyond the amount of goods and merchandise then actually received.

The declaration contains a single count. After reciting the substance of the covenant, and averring the delivery of the $11,418,32 amount of goods, it alleges that the plaintiffs have, "at all times since the making the said article, been ready and willing, when legally required, and upon reasonable request made by said Graham or his order, to deliver to him or his order any other and further quantity of goods, wares, and merchandise, which he, the said Graham, or his agent, might select, when the same should be selected, on account of the aforesaid tract of land, agreeably to the provision and stipulations contained in said article. And the plaintiffs further say, that since the execution of said articles they have at all times been ready and willing, in pursuance to the terms thereof, to receive a good and sufficient deed, etc., and to pay or deliver to said Graham, or to secure to be delivered to him or his order on demand, such goods, suitable to the Cincinnati market, at a fair marketable price, as he or they may choose, to the amount of the difference, etc. And they further say, that since the execution of these articles, and since the expiration of the year therein mentioned, they have at all times, at the period in said articles contemplated, been ready to receive possession of the premises in the said article described. And in fact they say their covenants have been kept and performed. And they further in fact say, that although the period of one year,

Courcier & Ravises *v.* Graham.

mentioned in said articles, at the end of which the said Graham, by his covenant, should have conveyed the said land, has long since elapsed and gone by; and although the said tract of land has been long since valued, and the price fixed to the same, and the said valuation approved by said Graham, yet said Graham, well knowing the premises, and well knowing that he had and did receive the goods and merchandise in said articles specified, amounting in value to $11,418.32, and that the said plaintiffs had well and faithfully fulfilled and performed *all and [332 singular the covenants and agreements on their part in this behalf to be kept and performed, nevertheless, said Graham has not executed and made to said plaintiffs a good and sufficient deed, nor hath he delivered possession, nor hath he secured to be paid the value of the said goods and merchandise; wherefore his covenants he hath not kept, but hath broken the same," etc.

The plea is *non est factum*, without an affidavit, but accompanied with a notice stating an offer to perform, a tender of the deed, bad quality of the goods, etc.

The plaintiffs gave in evidence the covenant declared upon, and proof of the delivery of the merchandise stated in it. They also gave in evidence a letter from Graham to the plaintiffs, dated at Philadelphia, October 20, 1818, stating that he had approved the price fixed by the valuers, and intended to comply with the contract; and submitting for consideration a connection of the paper title, and a conveyance from himself to the plaintiffs; and remarking it was doubtful whether he could tender a performance at any other time than the end of the year, and adding, "I am ready either now or then to perform what is necessary;" and remarking also, that the deed from Symmes to Dayton, under whom the title was derived, was not among the papers, but should be supplied.

The plaintiffs also gave in evidence a letter from them to the defendant, dated October 22, 1818, objecting to the sufficiency of the title:

1. That there was no deed from Symmes to Dayton.

2. That Mrs. Symmes had not relinquished her dower.

3. That the deed from Vanhorne to Williams was not recorded in time.

4. That there was no certificate that there were no unsatisfied judgments against intermediate owners.

345

Upon this proof the plaintiffs rested the case, stating to the jury that they claimed to recover the $11,418.32, with interest.

The defendant moved the court to direct a nonsuit, upon the ground that the evidence given by the plaintiffs did not make out their cause of action as alleged in the declaration, and the court reserved the decision of this motion until the cause was further 333] heard, and directed the defendant to *proceed in the case. The defendant then gave in evidence that he had tendered a deed to the plaintiffs on the 30th of March, 1819, in compliance with his contract, and also, that he had offered to the plaintiffs for their acceptance a deed, with an abstract of the title, in October, 1818, and also, in February, 1819, before the end of the year in the covenant stated, to which the plaintiffs objected, because there was no deed from Symmes, who received the patent from the government, to Jonathan Dayton, under whom Graham deduced title, and because of several supposed existing claims for dower. The defendant also gave evidence of the possession of Joel Williams, from whom he purchased, and of a connected and uninterrupted possession, from and under a purchase made from Dayton, in the year 1791. And also the paper title from Dayton to the respective persons in succession, who had held possession down to Joel Williams, from whom the defendant derived possession, except a deed from Riddle to Vanhorne, which deed, dated in the year 1808, attested by one witness, acknowledged before a justice by the grantor, and recorded, the defendant also offered in evidence; but upon the suggestion of the plaintiff's counsel, it was rejected by the court. The defendant also gave in evidence a deed from J. C. Symmes to Moses Miller, for a tract of land adjoining the section No. 19, in which the land in question is situate, bearing date November, 1798, reciting that Jonathan Dayton was the purchaser and locator of section 19. The defendant also gave in evidence the deposition of Jonathan Dayton, stating that a deed had once existed from Symmes to himself for said section.

Upon this evidence the defendant asked the court to instruct the jury that, by a just construction of the covenant, the place for the carrying it into execution was Cincinnati; that the deed must be made, the possession delivered, and the delivery of the goods on demand secured, at the same time; and the plaintiffs not having alleged in their declaration, or shown in evidence, that they were ready at Cincinnati at any time to perform the contract on their

part, and accept a performance from the defendant, they could not recover at all in this action, or if they could recover, could only recover nominal damages. But the court instructed the jury that the plaintiffs were entitled to recover the full damages *they [**334** might have sustained without adducing any proof of the matters claimed as necessary to be made out in proof by the plaintiffs.

The defendant also asked the court to instruct the jury that upon the evidence adduced, they ought to presume a deed from John Cleves Symmes to Dayton. And that the deed from Riddle not being in evidence before the court, and not having been objected to by the plaintiffs, at any time, until the trial in the common pleas, and the possession under it having continued so that the possession of Graham or those claiming under him could not be disturbed, a good and sufficient title was made out to satisfy the terms of the covenant. But the court instructed the jury that no continuance of possession for any time less than where the statute of limitations would operate to bar a recovery in ejectment was sufficient to warrant the presumption of a deed, and that if the title was found to have been in Dayton, no other title would satisfy the terms of the contract, except a complete connected paper title from Dayton to Graham, the defendant.

The defendant also gave in evidence to the jury, that the goods delivered as stated in the covenant were of very inferior quality, and were not worth in money the sum stated as their price, and asked of the jury, if they found a verdict for the plaintiffs, to find such sum only as the true cash value of the goods. But the court instructed the jury that it was not competent for the defendant to contest the justness of the price fixed upon the goods in the covenant, and that such price must be taken by the jury as their true value.

The jury found a verdict for the plaintiffs for the amount of the goods, with interest.

The defendant moved the court for a new trial upon the ground of misdirection in all the matters here stated. The consideration and decision of this motion, as well as of the point reserved in regard to a nonsuit, was adjourned to Columbus.

ESTE and HAMMOND, for the defendant:

Upon the evidence adduced by the plaintiffs, they are not entitled to recover, and a nonsuit ought to be directed.

**335]** *The object of the action is either to disaffirm the contract and recover the deposit or purchase money paid; or to affirm it, and recover the value of the bargain.

If the first, the evidence is insufficient; it shows only an inability to comply in October, when the party had until March following to enable himself to complete the contract. The right of one party to abandon the contract, upon the ground that the other is unable to perform it, can only be sustained by proving an inability to comply at the time of performance. The proof here is, only that the title to be conveyed was not complete five months before the conveyance was to be made.

The party who intends to disaffirm his contract, and claim to receive back the money paid on it, ought to give notice of such intention, and when he sues, shape his action and declaration accordingly. Sugden on Vendors, 159; 2 Esp. 639; 3 Bos. & Pul. 162, 246. Neither the declaration nor testimony, makes a case of this character.

The declaration in this case affirms the whole contract; it assigns breaches upon every covenant, and avers a performance or readiness to perform all the covenants on the part of the plaintiff. By the terms of the article, the plaintiffs were to perform everything they undertook to do, before the defendant was to convey the land. In relation to the conveyance, everything was precedent. The averment, therefore, that the plaintiffs had performed, or were ready to perform, was indispensable. Without it, their declaration would have been bad. 1 Salk. 112; 7 Term, 121; 8 Term, 366; 1 East, 201; 5 East, 107, 112. From the same authorities it appears, that it was as necessary to prove these averments, at the trial, as it was to insert them in the declaration. No such proof was adduced; for this reason the plaintiffs ought to have been nonsuit.

There ought to be a new trial:

1. Because the plaintiffs did not entitle themselves to recover anything beyond nominal damages.

2. Because the defendant had tendered a good title.

3. Because the court misdirected the jury as to the value of the merchandise received under the contract.

1. There must be some *place* where the contract was to be per- **336]** formed; that place was Cincinnati. *There only* the *possession could be delivered. There the title could be investigated. There the law as to the validity and execution of the deed could be

best understood. The plaintiffs could not recover without proof that they were at Cincinnati on the day ready to give security for the delivery of the balance of the goods, and receive a title. The authorities above cited are full to this point. And of these necessary facts no proof was offered.

It is said that this proof, under the pleadings, is not necessary; that *non est factum* puts nothing in issue but the execution of the deed. But *non est factum* is the general issue, and puts the plaintiff upon the proof of his whole case. Were it, however, as is contended, *non est factum* pleaded, can not place the defendant in a worse condition than if no plea were put in and judgment signed against him on default, and in that case, if the plaintiff seeks to recover more than nominal damages, where the action sounds in damages which are uncertain, he must prove his whole case. 2 Black. 748; 3 Term, 302, per Buller; Strange, 1149; 1 Sel. Prac. 335; Doug. 302.

2. The title of the defendant, and which he offered to the plaintiffs, was a good and indisputable title. He showed a conveyance to himself from the person last seized and a paper title, accompanied with a possession from the year 1791 downward. One deed in the chain of title was defectively executed. But though inoperative as a conveyance, it was good and available to protect the possession given under it against the party and his heirs. Neither could recover in ejectment against the person claiming and in possession under the purchase. The title, which can not be disturbed, is indisputable.

No deed was produced from Symmes to Dayton; but there was full proof of its having existed. If this had not been done, it ought to have been presumed after a lapse of twenty-seven years, and a possession evidently founded upon the fact that there was such a deed. Phil. Ev. 119; 7 Wheat. 110; 6 East, 215; 10 Johns. 377.

It is not enough for the plaintiffs to cast doubt upon the title. In a case like this they must prove it to be positively bad. Sug. Ved. 157; 4 Esp. 221; 3 Bos. & Pul. 426.

3. The defendant was not concluded by the stipulated *price [337 of the goods delivered on the contract; but might prove that they were of less value.

It was not a contract to purchase for cash, but for an exchange of commodities. In such cases, where estimations are made on

both sides, it is usual to affix a price essentially different from which
either party would agree to pay in money. When a recovery in
money is to be substituted for the article originally contemplated
by the parties, the true value in money of the commodity received,
ought to be the rule of damages. The case of Basten v. Butler,
7 East, 479, and the cases cited in the notes, sustain us in the
principle we contend for.

Rowan, for the plaintiffs:

The suit in this case was an action of covenant; the breach al-
leged was a failure to convey a tract of land.

The plea was *non est factum*. Under that plea, and by virtue of
the statute in that case provided, the defendant specified in a written
notice the grounds upon which he rested his defense.

Those specifications are to be considered in the nature of special
pleas to the action, and like all other pleas, admit whatever is well
pleaded in the declaration, which they do not traverse or deny.

The pleas, therefore, not having denied the readiness on the part
of plaintiffs to comply with their part of the covenant, admitted it,
and thereby absolved plaintiffs from the necessity of proving it;
for what is admitted by the pleadings need not be proved.

The motion, therefore, made by the defendant to instruct the jury,
as in case of a nonsuit, because the plaintiffs did not prove the
readiness, which they had alleged in the declaration, to comply with
the covenants on their part, was properly overruled by the court.
Upon any other principle, the pleadings, instead of conveying
notice to his adversary, of the grounds relied upon by each, would
operate as a decoy, and entrap instead of promote the justice of the
case.

Whatever is said about the competency of the declaration is
foreign and irrelevant. It can only be brought before the court,
by demurrer, or error in arrest of judgment.

338] *What is said about the place of performance can cut no
figure. If the defendant had pleaded his readiness to perform,
and his incapacity to do so without the concurrent agency of plaint-
iffs at Cincinnati, then the court would have been obliged to have
determined the place at which performance was, by the covenant
of the parties, to have been done. But the matter was not drawn
in question by the pleadings. The same principle applies to all

Courcier & Ravises *v.* Graham.

that is said in relation to the absence of proof on part of plaintiffs, as to their readiness to secure the payment of balance.

For it is a settled rule of law, that the obligor is bound to perform his covenant according to its import, unless the *concurrent agency* of the obligee *is necessary* to the performance on his part. But the defendant has not, in this case, intimated by his pleas, that he was restrained from performance, by the absence of such *concurrent agency.*

What is said about the necessity the plaintiffs were under of affirming or disaffirming the purchase, or contract, in their declaration; or of their going in the declaration for the *earnest money,* or· for the worth or value of the contract, is considered irrelevant. First, because they did not, and could not, legally arise in the cause, there being no demurrer to the declaration; and next, because the action was brought on a specialty, and the contract being by specialty, no other *mode of suit* or of declaration, is sanctioned by rules and usages of law; an action for the earnest or deposit money must have been an action on the case for money had and received, etc. But that action will only lie where the contract is by parol. The contract in this case was by *deed or specialty.* The distinction of contracts into *parol* and by *specialty* is well known; and that a *seal* constitutes the boundary line is not less known, and that the action for money had and received, will not lie where the contract is by specialty, can not be doubted.

The grounds for a new trial are considered utterly untenable. A motion for a new trial must, in every case, address itself to the *sound discretion of the court,* and it is to be granted, or refused, as upon a just survey of the case, and all its circumstances, the court shall believe the substantial justice of the case *requires.*

*In this case it is alleged that the substantial justice of the [339· case requires it: 1. Because proof as to the value of the goods received by defendant was not permitted by the court. In answer to that, it is alleged that what is *agreed* by the *parties,* need not be proved, and the parties had themselves agreed upon the value of the *goods* and, therefore the court rightly excluded proof as to their value. And next, because the defendant, by complying with his contract, might have silenced all dispute upon this subject.

But it is again said that the defendant was ready, willing, and able to comply with his contract. This leads to a consideration

of so much of the contract as relates to his *capacity.* By the covenant he was to convey to the plaintiffs by a deed in *fee simple,* clear of *all incumbrances;* the *title to be indisputable,* etc. Did the defendant exhibit an *indisputable title?* Did he even exhibit a title *free* from, or *clear* of, all *incumbrances?* There were *two links broken,* or rather *absent* from his chain of title. There was no conveyance from Symmes, the patentee, to Dayton. There was no legal deed from Riddle to Vanhorne. There were sundry dower claims *unrelinquished.*

The first question is, what is meant by the words *indisputable title,* in this covenant? Did the parties mean a clear, well connected, legal title, according to the laws regulating conveyances, and the *tenure of realty thereby,* or did they mean an *inferential* title, one which might be deduced, in a *course* of *disputation,* from possession, and facts in the country, which existed in *presumption* of law upon a given state of fact, or a title in *fact,* which silenced all *presumption,* and *excluded all facts* which it did not *import?* Surely the latter. This is the meaning of those terms, in common parlance, as well as in law. It is a rule, that in expounding deeds, the terms are to be taken *most strongly* against the *obligor.* This was evidently the understanding of defendant himself, because he acknowledged when he presented the abstract of title, the absence of the deed from Symmes to Dayton, and his obligation to procure it.

But the idea of substituting *possession* for *title* never occurred to him, when making out the abstract of his title.

That dower is an incumbrance has been settled over and over **340]** again. The chancellor has repeatedly enjoined the *payment of the balance of the purchase money until dower should be relinquished. An indisputable title, free from all incumbrances, means not only that it shall be free from *actual existing,* but from *probable,* and even *potential incumbrance.*

The chancellor will never decree the payment of the purchase money, when *doubt hovers over the title,* still less when there are two links wanting in the chain of title, and when there are several dower claims which may be asserted.

. The verdict, then, is according to the *justice* of the case, and ought not to be disturbed. It is according to the *law* of the case, and ought not to be disturbed.

The pleas were, first, *non est factum,* which questioned only the

Courcier & Ravises v. Graham.

execution of the deed; second, tender of performance; and third, want of value, or rather reduction of value on the goods.

For each of these notices must be considered in the nature of a special plea. Taking, then, the three pleas together, or separately, all the allegations of the declaration, which are not controverted by them, stand admitted, and being admitted, need not be proved by plaintiffs, and can not be questioned by defendant. By his plea of tender, he takes upon himself the proof that he has offered to convey an indisputable title, clear and free from all incumbrances, and admits that he was reduced by the performance of plaintiffs, and their relative posture to him in other respects, to the necessity of making a tender of a conveyance of that character. In every view, therefore, of the case, judgment should be rendered upon verdict for plaintiffs.

Opinion of the court, by Judge HITCHCOCK:

In the case of Kingston v. Preston, Doug. 690, 691, Lord Mansfield observes, "There are three kinds of covenants: 1. Such as are called *mutual* and *independent*, where either party may recover damages from the other for the injury he may have received. by a breach of the covenants in his favor, and where it is no excuse for the defendant to allege a breach of the covenants on the part of the plaintiff. 2. There are covenants which are *conditions dependent* on each other, in which the performance of one depends on the prior performance *of the other, and, therefore, till this [341 prior condition be performed, the other party is not liable to an action on his covenant. 3. There is also a third sort of covenants, which are *mutual conditions* to be performed at *the same time*, and in these, if one party was ready, and offered to perform his part, and the other neglected or refused to perform his, he who was ready and offered, has fulfilled his engagement, and may maintain an action for the default of the other, though it is not certain that either is obliged to do the first act."

Much difficulty arises at times in the construction of covenants, and in ascertaining whether they are dependent or independent; but the same rules must be adopted as in the construction of other instruments of writing. The intention of the parties is to govern, and that intention must be collected from the whole instrument taken together. The order of time in which the several acts are to be performed, however much they may be transposed in the

deed, will show the intent of the transaction. If, upon the whole, it shall appear to have been the intention of the parties to trust each to the personal security of the other, the covenants must be considered as independent. So when the covenants in a deed are established, in one particular instance, to be independent, it seems to be settled that they must be so considered throughout, although in the deed there may be mutual acts to be performed at the same time, or although the plaintiff had covenanted to do certain acts on his part, in the intermediate time, between the performance of the different acts to be done by the defendant. 2 Johns. 273, 387; 5 Johns. 78; 2 H. Bl. 389. So where mutual covenants go only to a part of the consideration, and a breach of that part may be paid for in damages, it has been determined that they are to be regarded as independent. 7 Johns. 244, and cases there cited.

In declaring in covenant, the declaration must be varied according to the nature of the instrument declared on. If the liability of the defendant depends upon the performance of a prior covenant or condition on the part of the plaintiff, performance or a tender of performance must be averred, or the declaration will be bad on demurrer. If the covenant contains *mutual conditions* to 342] be performed at the *same time*, the \*plaintiff must aver that he was ready and offered to perform on his part, but it is not necessary that he should aver performance, or an actual tender of performance. 1 East, 203; 3 Bos. & Pul. 457; 5 Johns. 179.

There is, perhaps, more difficulty in determining to which class of covenants the contract before the court belongs than seems to be apprehended by counsel. The agreement was made on the 27th of March, 1818, at which time, merchandise, estimated at the value of *eleven thousand four hundred and eighteen dollars and thirty-two cents*, was paid by the plaintiffs, Courcier and Ravises, to the defendant, Graham, and paid as expressed in the contract, on account of the purchase of the land. They covenanted to deliver the aforesaid amount of merchandise forthwith, and the evidence proves that it was forthwith delivered. In addition to this, they covenanted that they would, "from time to time, when thereunto required, within one year from the date hereof, deliver to him, the said Thomas Graham, or to his agent, or order, any further quantity of merchandise, as he, the said Thomas Graham, or his agent, or order, may select, at a fair market price, to the amount of —— dollars, further on account of the aforesaid tract of land." The

defendant, Graham, agreed on his part, that, if he approved of the price at which the land should be valued, he would, at the end of one year from the date of the agreement, convey, by good and sufficient deed of conveyance, etc., the same land to the plaintiffs, they securing to be delivered, on demand, to the said Graham, or his order, etc., goods suitable to the Cincinnati market, etc. But if Graham did not approve of the price at which the land should be valued, then, at the end of one year from the date of the agreement, he was to secure the payment for the goods which had then been received, and which should thereafter be received, etc., in four annual payments, with interest after one year. By the terms of this contract, the land was to be conveyed, and the purchase money secured at the same time, and had these been the only acts covenanted to be performed, the covenant would have been clearly within the description of those containing *mutual conditions* to be performed at *the same time*, and neither party could have sustained an action against the other without showing a readiness and offer to *perform. The plaintiffs covenanted to deliver goods of [343 the value of eleven thousand dollars and more forthwith. Had they refused to deliver these goods, might not the defendant have had his action against them for the breach of this covenant, and that, too, without waiting until the end of the year? They further covenanted to deliver other merchandise in addition, within the year; and had this merchandise been selected and demanded, what could have prevented the defendant from maintaining an action against the plaintiffs for a breach of this covenant, provided they had refused to deliver the merchandise thus selected and demanded. Graham, on his part, was bound to do nothing until the end of the year, except to agree in the appointment of three persons to value the land. He was neither bound to convey, nor to secure payment for the goods. Now if to this case we apply the principles which were settled in the case cited from 2 and 5 Johnson, it would appear to me to be at least doubtful whether these must not be considered as independent covenants.

Again—let us compare the covenants in this case with those in the case of Bennett *v.* The Executors of Pixley, 7 Johns. 249. In that case the declaration stated that the testator, on the 22d of February, 1802, by his writing obligatory, sealed, etc., promised and agreed with plaintiffs, in consideration of $400 to him paid, to convey to the plaintiff, on or before the 1st day of December

then next, one certain lot of land, lying, etc., and if the said lot
of land should be appraised over the sum of $400, etc., same was
to be made up to the testator, and if it was appraised under $400,
the sum which it fell short was to be deducted out of certain
notes, etc. In the case before the court, Courcier and Ravises cov-
enanted forthwith to deliver goods estimated to be worth more
than $11,000, which goods were actually delivered at the time of
making the contract; within six months after that time the land
was to be valued; at the end of the year it was to be conveyed;
if the valuation exceeded the amount of goods received, the plaint-
iffs were to secure the difference, to be paid in goods on demand;
but if the valuation fell short of the amount of goods received,
then payment was to be secured by the defendant.

**344]**  *There appears to be a great degree of similarity in the
features of the two cases. In one, $400 was paid in land; in the
other, more than $11,000 was to be paid, and actually was paid
upon the execution of the contract. In both, the land was to be
valued and conveyed at a subsequent period, and in both, if the
valuation exceeded the amount already paid, the vendee was to
make up the difference, in the one case by payment, in the other
by securing payment; and if the valuation fell short of the amount
already paid, then the difference to be accounted for by the vendor.
It may be said that in the case cited there was no agreement that
the amount beyond the $400 should be paid at the time the con-
veyance should be executed. But what say the court? "Assum-
ing that there was a covenant on the part of the plaintiff to pay
for the amount of the appraisement beyond $400, yet it only went
to a *part* of the consideration, and the rule is settled that where
mutual covenants go only to a *part* of the consideration, and a
breach of that part may be paid for in damages, the defendant
shall not set it up as a condition precedent. The covenants in
such case are to be considered as independent." "The damages
sustained would be very unequal if the covenant of the plaintiff
was held to be a condition precedent. He, in the meantime, loses
his $400, and the testator might not lose anything. The plaintiff
had in part (at least) executed the bargain by paying the $400,
and the testator ought not to keep that sum without conveying
the land, because, that *possibly* there may be a surplus to receive,
and he may sustain some damage by the plaintiff not tendering
that surplus. This would be unjust. He is bound to convey, and

Courcier & Ravises v. Graham.

he may then resort to his action if a surplus should be found to exist upon the appraisement."

The principle decided, and the reasoning adopted, apply strongly to the case under consideration.

The mutual covenants go only to a part of the consideration. More than $11,000 was actually paid, and additional payments were to be made or secured, provided the land should be valued at an amount greater than what was then paid. In this case it may be said that the damages would be unequal if the covenant of the plaintiff was held to be a condition precedent. He would lose his $11,000, *and Graham *might* not lose anything. In [345 this case the plaintiff has in part (*at least*) executed the bargain by the payment which he has made, and in this case had Graham at the end of the year conveyed the land, and had the plaintiffs refused to secure the payment of the surplus, he might have had his action to receive that surplus.

, If the cases cited are law (and the principles by them decided appear to be consistent with reason, justice, and common sense), I should be led to the conclusion that the covenants in the case before the court must be regarded as independent. But as the decision of the court upon the motion for a nonsuit is not founded upon this idea, it is unnecessary to give a definite opinion upon the point. The defendant contends that the covenants are dependent, or, at least, that they contain *mutual conditions* to be performed *at the same time*. The plaintiffs in their declaration have thus treated them, and have alleged performance on their part, or a readiness and offer to perform. Upon the trial, these averments in the declaration were not proven, and if by the pleadings they were properly put in issue, the motion for a nonsuit should have prevailed.

Whatever is admitted in pleading need not be proved, and whatever is not denied may be considered as admitted. In covenant greater strictness is required in pleading than in most other actions. If the defendant relies upon matter of excuse for the non-performance of his covenant, he must plead it specially. If he would excuse himself on the ground that the plaintiff hath not performed a condition precedent, this must be pleaded specially. 1 Chitty's Pleading, 483. This form of pleading is adopted in the books, and I find no case where the plaintiff, for the purpose of supporting his action *merely*, has been compelled to prove the performance of a precedent condition, unless the fact of performance

was in some shape denied by the plea. If the defendant relies upon his own performance, it must be specially pleaded, and under this plea I presume it will not be contended that the plaintiff would be bound to prove the performance of a precedent condition. The performance of the defendant, and not of the plaintiff, is the thing in issue, and for the purpose of trying that issue the performance of the plaintiff is admitted.

346] *In the present case the plea is *non est factum*. What is put in issue by this plea? Counsel for defendant say that this is a general issue plea, and that a plea of the. general issue puts the plaintiff upon proof of all the material averments in his declaration. This, as a general rule, is undoubtedly correct. But in some actions, it is said in the books, there is no general issue. And in some actions the general issue plea is not considered as a denial of all the allegations of the declaration. In replevin, for instance, the plea of *non cepit* puts in issue nothing but the taking of the property. Under that plea the plaintiff is not bound to prove any interest in the property taken. Yet this is a general issue plea; and what is denied in an action of debt or covenant by the plea of *non est factum*, except the sealing and delivery of the deed upon which the action is founded. Chitty, in his treatise on Pleading, vol. 1, p. 116, says that this plea puts nothing in issue but the sealing of the deed; and Espinasse, in his Digest, 306, that the issue is only upon the existence or goodness of the deed. For this dictum he cites 2 Black. 1152. The doctrine laid down by Chitty and Espinasse is supported by this and other adjudged cases. Muscett *v.* Ballet, 2 Cro. 369; Bishop *v.* Brook, Com. Rep. 303; Gardner *v.* Gardner, 10 Johns. 47, are full in point, so that the counsel for the defendant must be mistaken in supposing that this is a denial of all the material averments in a declaration, for most declarations in covenant contain other averments than the single allegation of the sealing and delivery of the deed. But are not these opinions and decisions consistent with reason and common sense? One principal object of pleading is that the parties may have notice of the grounds of complaint and defense upon which they severally rely. The plaintiff in his declaration alleges, among other things, that the deed declared on is the deed of the defendant. To this declaration the defendant pleads *non est factum;* in other words, he denies the existence or goodness of the deed. By this plea he apprises the

plaintiffs that he shall contest the validity of the deed in some way; but does he apprise him of any other defense? Under this plea the defendant may show that the deed was void at common law *ab initie;* that it was delivered as an escrow, or that it became void *after it was made, and before the commencement of [347 the suit, by erasure, interlineation, alteration, etc. Evidence of this description the plaintiff must expect to meet. But would proof that the plaintiff had not performed a precedent condition in the same deed by him to be performed, be evidence that the deed was not the deed of the defendant; or would it destroy its validity? Evidence of this description under a proper state of pleading might and would destroy the plaintiff's right of action, but would not prove that the deed was void. This idea, with respect to the operation and effect of the plea of *non est factum,* seems to have been generally entertained by pleaders, and therefore, in many instances, we find this plea connected in the same case with a special plea that a plaintiff has not performed a condition precedent. If a plea of *non est factum* put such performance in issue, such practice would not have been introduced. And it is because the operation of this plea is thus limited, and because there is no one plea that puts in issue every material allegation in a declaration in covenant, that some writers on the subject of pleading have said that in this action there is, properly speaking, no plea of the general issue.

In the case under consideration, the defendant having pleaded as before stated, the cause was submitted to the jury. The plaintiffs introduced in evidence the deed, the validity of which was not questioned. He introduced further evidence to prove the amount of damage sustained. The testimony. was competent, and having it before them, the jury could not have found that the deed was not the deed of the defendant, but must of necessity return a verdict for the plaintiffs upon the issue joined; and the court could not with propriety have directed a nonsuit.

Having disposed of the question upon the point reserved, I will now proceed to consider the motion for a new trial.

On the trial of the cause, the counsel for defendant insisted, that by a just construction of the contract, Cincinnati was the place where the same should have been performed. And as plaintiffs had neither averred in their declaration, nor shown in proof, that they were ready, either by themselves or agents at Cin-

cinnati, to perform or accept a performance from the defendant,
348] therefore, they were not entitled *to recover, or, if entitled to
recover, could only recover nominal damages. The court, how-
ever, were of opinion, and so instructed the jury, that the plaint-
iffs, under the pleadings, were entitled to recover the full amount
of damages sustained. It is said that in this opinion the court
were mistaken. As to the rights of recovery, sufficient has al-
ready been said. If the declaration was defective, this should have
been taken advantage of by demurrer, or (if the defect was not
cured by verdict) by motion in arrest of judgment. By craving
oyer, the deed itself might have been made a part of the record.
The defendant having relied upon the plea of *non est factum*, and
the issue being found against him, no sufficient reason can be as-
signed why the plaintiff should not recover the damages proven
to have been sustained. These damages were the value of the
merchandise delivered, estimated at *eleven thousand four hundred
and eighteen dollars and thirty-two cents*. This amount was sought
to be recovered, together with the interest, and to this they had a
right.

An attempt has been made to assimilate this case to a case stand-
ing on default. The reason assigned for this similarity is, that
the plea was not sworn to according to the statute. But in this
case, as well as every other where a plea is filed, there was an issue
to be tried. That issue must be found either for plaintiffs or de-
fendant. In a case standing on default, the jury have nothing to
do but to assess the damages.

That the defendant did not rely for his principal defense upon
the plea filed, we may well conclude, from the circumstance that
several notices are attached to and connected with the plea. The
principal object of pleading *non est factum* seems to have been to
lay the foundation for giving notice, and to save the trouble of
special pleading with technical precision. These notices are, in
substance, that the defendant will, on the trial, prove performance,
tender of performance, readiness and offer to perform, etc., and
also that the plaintiffs refused on demand to deliver the goods and
merchandise which had been selected, and that the merchandise
delivered was of less value than *eleven thousand four hundred and
eighteen dollars and thirty-two cents*. In support of the notice con-
nected with his plea, the defendant gave in evidence the facts par-
349] ticularly set forth in the *motion, and the court instructed

360

the jury as therein stated. Was there anything incorrect in this opinion, or any mistake as to matter of law?

The first position of the court was, that no continuance of *possession* for any time less than where the statute of limitations would operate to bar a recovery in ejectment, was sufficient to warrant the presumption of a deed. The authorities cited by counsel show that continuance of *possession* for a less period of time, accompanied by *other circumstances*, might be sufficient to warrant this presumption. In Bealy *v.* Shaw and others, 6 East, 215, Lord Ellenborough says, "I take it, that twenty years exclusive enjoyment of the water in any particular manner, affords a conclusive presumption of right in the party so enjoying it, derived from grant or act of Parliament. But less than twenty years enjoyment may or may not afford such a presumption, according as it is attended with circumstances to support or rebut the right." From this I infer, that *possession alone* would not be sufficient to warrant the presumption, unless continued for twenty years; and, if so, the court were correct. The *possession* under Dayton had continued for more than twenty years, and this possession was accompanied by circumstances which would justify the jury in presuming, and they probably did presume, a title in that individual. But suppose the expression used by the court upon this point was not sufficiently guarded, or even that there was a mistake as to the law, could this circumstance have made any difference in the final decision of the case? If it would not, to grant the motion for a new trial would be worse than useless.

The next position assumed by the court was, that if the title was found to have been in Dayton, then no title would be sufficient to satisfy the terms of the contract, except a complete connected paper title from Dayton to the defendant, Graham. By the terms of the contract, Graham covenants that he will "by a good and sufficient deed of conveyance and assurance in the law, well and sufficiently, grant, convey, and assure the aforesaid tract of land, with the appurtenances, unto the said Andrew Courcier and Frederic Ravises, their heirs and assigns, in fee simple, clear of all incumbrance, the title to the same to be indisputable."

*The evidence adduced and admitted by the court showed [350 a paper title from Dayton to Riddle, and from Vanhorne to the defendant. What was there to prove title in Vanhorne? Possession, and nothing but possession, unless it be the fact that he was

put in possession by Riddle. This fact hardly conduces to prove titie. Graham, then, could trace his title back no further than to Vanhorne, whose only evidence of title consisted in a possession commenced in 1803, and which, at the time of the tender, had continued in himself and those claiming under him for about eleven years. Under these circumstances, had Graham conveyed the land to the plaintiffs, and had they accepted the conveyance, would it have vested in them a "title to the same indisputable?" Most clearly it would not. Here was an important link wanting in the chain of title From the evidence before the jury, the fee was vested in Riddle. And had Riddle commenced his action of ejectment against Graham, the latter would have been without defense. Will it be said that Riddle would have been estopped by his deed attested by one witness? It must be recollected that this deed was not in evidence. It had been excluded by the court, and there was nothing submitted to the jury to prove that the title had ever passed from Riddle. In this situation of the case, I can have no doubt that the court were correct in instructing the jury that there must be a complete connected paper title from Dayton to Graham, to satisfy the terms of the contract.

The deed from Riddle to Vanhorne was properly excluded. By the first section of the act providing for the execution and acknowledgment of deeds, passed February 14, 1805, it is provided that all deeds for the conveyance of lands, etc., "shall be signed and sealed by the grantor, in the presence of two witnesses, who shall subscribe the said deed of conveyance, attesting the acknowledgment of the signing and sealing thereof," etc. This law was in force at the time the deed from Riddle purports to have been executed. This deed was defective, inasmuch as it was attested but by one witness. The law was not complied with. It could convey at most only an equitable interest. The plaintiffs were to receive a legal estate, free from incumbrance, the title to which 351] should be indisputable. This *deed did not convey such an estate; of course, it could not be received in evidence.

On the subject of damages, the jury were instructed that the price fixed upon the merchandise in the covenant must be the governing principle, and that it was not competent for the defendant to contest the justness of the price. In this opinion it is insisted that the court mistook the law, and the case of Basten v. Butler, 7 East, 479, is relied on as an authority to show this mis-

take. In that case the plaintiff declared as upon a *quantum meruit*, for work and labor done and materials found. There had been no previous contract as to the price to be given, and the claim rested solely upon the worth or value of the work. The court decided that it would be proper to permit the defendant to prove that the work was less valuable than claimed to be by the plaintiff; and they go so far as to intimate that when there has been a particular price agreed upon, for which work and labor shall be done, the defendant having given notice, may show that the materials are bad and the work defectively done. But in cases of this description, the decisions have been variant, although the rule appears to be finally settled, as stated by Lord Ellenborough in Farnsworth *v.* Garrard, 1 Campbell, 28: "That if there has been no beneficial service, there shall be no pay; but if some benefit has been derived, though not to the extent expected, this shall go the amount of the plaintiff's demand, leaving the defendant to his action for the negligence. The claim shall be co-extensive with the benefit."

The case of Basten *v.* Butler would, in some degree, compare with the case before the court were this a *quantum valebant*, and had there been no previous agreement as to the price of the goods. In this case, however, the goods were estimated at a specific price. This price was agreed upon by the parties. The defendant agrees to pay this price at a future period in land if he is satisfied with the valuation. The valuation is made, and he assents to it; but he fails to make the conveyance, and thus remains debtor for the goods. No fraud was practiced; none was pretended. He agreed to the price of the goods with a full knowledge of their character; and it is not competent for *him now to say that they were [35**2** of less value. There must be judgment on the verdict.

Judges PEASE and SHERMAN concurred.

Judge BURNET, having been counsel with Graham, did not sit in this cause.