Albert **PAVLIK** and Anna **H.** Pavlik, Plaintiffs-Appellants,

v.

**CONSOLIDATION COAL CO.,** Inc., Defendant-Appellee.

No. 71–1225.

United States Court of Appeals, Sixth Circuit.

Feb. 23, 1972.

Richard O. Colgrove, Painesville, Ohio, Donaldson, Colgrove, Cardinal & Freed, Painesville, Ohio, on brief, for plaintiffs-appellants.

Eben H. Cockley, Cleveland, Ohio, Raymond J. Durn, Jones, Day, Cockley & Reavis, Cleveland, Ohio, on brief, for defendant-appellee.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

EDWARDS, Circuit Judge.

This appeal concerns a dispute about the interpretation of the defeasance clause of an easement for a "pipeline for transportation of coal slurry." The easement had been granted by appellants' predecessors in title to the land affected, to the predecessors in title of the appellee. Jurisdiction is based on diversity of citizenship and, hence, Ohio law applies. The District Judge who heard this case on a record consisting entirely of stipulated facts held that the fact that the pipeline had not been used for over one year to transport coal slurry, but was being maintained in readiness to do so, did not serve to terminate the easement. We believe his construction of the contract was in error and we reverse.

The critical language of the easement is contained in the granting clause and in the defeasance clause:

### Granting Clause

IN CONSIDERATION of Ten and no/100 Dollars ($10.00), receipt of which is hereby acknowledged, the undersigned Fred S. Wellman, and Frances M. Wellman, husband and wife, hereinafter called grantor, hereby grants to Pittsburgh Consolidation Coal Company, a Pennsylvania corpo-ration qualified in Ohio, the grantee, its successors and assigns, a thirty feet wide perpetual right of way, as set forth on plat attached hereto as Exhibit "A" and made a part of hereof, over and through the grantor's lands in the Township of Mentor, County of Lake, State of Ohio, and described as follows: (Description omitted) . . .

for the purposes and with the rights of constructing, maintaining, operating, altering, repairing, replacing and removing one pipe line for the transportation of coal slurry, with free ingress and egress over said lands for said purposes.

### Defeasance Clause

It is a condition of this deed that, if at any time said pipe line shall cease to be used for the purpose set forth herein for the period of one year, then all rights of the grantee obtained by this deed shall cease and determine, and the land across which said right of way goes shall be free and clear of the easement granted hereby, without further act or writing; provided; however, that, if requested, grantee agrees to execute a formal release of said easement.

The stipulated facts which appear relevant to decision of this case include the following:

In 1956 the easement just recited in part was signed by the predecessors in title of the parties to this suit. The consideration was $995, including $75 for attorney's fees.

In 1955 Pittsburgh Consolidation Coal had signed a contract with Cleveland Electric Illuminating Company to supply it with thousands of tons of coal per year through a coal slurry pipeline extending 103 miles and terminating at CEI's Eastlake, Ohio, plant. The pipeline was built at a total cost of $14,500,000 and was in successful operation from its construction date in 1957 until August of 1963.

On May 14, 1963, appellee Consolidation Coal and CEI entered into a supplemental agreement whereby the pipeline was to be placed in an inactive state. The contract called for Consolidation to receive $105,097 per month for the life of its original 15-year contract, without the delivery of any coal at all, but under the obligation to maintain the pipeline in a stand-by condition, ready to go into operation on notice "as soon as practicable." This contract recited that the deactivation resulted from reductions in rail freight rates occurring since the activation of the coal slurry pipeline.

As of the deactivation, at the request of Consolidation, the parties negotiated a supplemental agreement for continuation of the contract for another year with the same defeasance clause included therein. The net effect of each supplemental agreement (there were 15 of them) was to extend the defeasance clause from a new date. The last extension was for 30 days, until May 27, 1967, after which time no further extensions were granted.

As to the purposes for the extensions, the parties stipulated:

"Since prior to June 15, 1964, Consolidation Coal Company and its predecessors have been negotiating with Albert Pavlik for an amendment of the Wellman Easement which would not contain any time limitation for lack of use and which would permit its use for all products, including solids, liquids, gases and mixtures thereof, and one of the reasons that the aforesaid extension agreements were executed was to preserve the status quo of the parties during the said negotiations."

After failure of negotiations and notice from the Pavliks that the easement had terminated, the Pavliks filed suit in state court seeking a declaration of rights under the contract.

Consolidation removed the case to the United States District Court and filed counterclaims. The sole issue appealed is whether or not the District Judge was correct in holding under the facts stated above that the easement was not terminated.

■ We believe that the District Judge's holding was in error. When the pipeline was deactivated, the defeasance clause should have been given its intended effect.

■ First, we feel that the language of the easement is not ambiguous. The plain language of the defeasance clause was, we believe, intended by the parties to refer to the operation of the pipeline for the transmission of coal slurry. When transmission of coal slurry ceased for a year, the defeasance clause became fully operative. We recognize, of course, that the granting clause twice employs the plural word "purposes" to refer to the rights of "constructing, maintaining, operating, altering, repairing, replacing and removing one pipeline for the transportation of coal slurry." But in terms of the defeasance clause read in conjunction with the granting clause, we believe that the easement only sets forth one purpose for the pipeline, namely, "for the transportation of coal slurry." When clear contract language itself reveals the intent of the parties, there is no need to turn to rules of construction. Florida Canada Corp. v. Union Carbide & Carbon Corp., 280 F.2d 193 (6th Cir. 1960); Great Lakes Towing Co. v. Bethlehem. Transportation Corp., 65 F.2d 543 (6th Cir. 1933); Cohn-Hall-Marx Co. v. Vanosdall, 25 Ohio App. 360, 157 N.E. 908 (1927); 11 Ohio Jur.2d Contracts § 133 (1955).

Second, if interpretation of the intention of the parties might be held to be required as to the granting and defeasance clauses, we would look first at the other terms of the contract taken as a whole. The meager price Consolidation's predecessor had paid ($995) was appropriate for the contract's rigid prograntor terms.[1] Over and above the

---

1. The parties stipulated that two weeks earlier the grantee had paid $30,000 for a somewhat longer easement over adjacent land, but on conditions, including the defeasance clause, much more favorable to the grantee. No appeal was taken from the portion of the judgment which held this easement to be still in effect.

harshness of the defeasance clause, the grantor also has the right to use the property as he sees fit and if his proposed use would require removal of the pipeline, he can demand that Consolidation remove and relocate it at any time. The pro-grantor provisions of the easement read as a whole support the interpretation above. New York Coal Co. v. New Pittsburgh Coal Co., 86 Ohio St. 140, 99 N.E. 198 (1912); Courcier & Ravises v. Graham, 1 Ohio 330 (1824); 11 Ohio Jur. Contracts § 148 (1955).

Third, (assuming interpretation outside the contract itself is called for) there were 15 occasions where Consolidation and Pavlik signed supplemental agreements after termination of the operation of the pipeline. These agreements were made at Consolidation's request and Consolidation paid small sums for them.

Actions of the parties reflecting their subsequent construction of a contract may be looked at in construing its purposes. Courtwright v. Scrimger, 110 Ohio St. 547, 144 N.E. 294 (1924); Grundstein v. Suburban Motor Freight, Inc., 92 Ohio App. 181, 107 N.E.2d 366 (1952); 11 Ohio Jur.2d Contracts § 88, § 162 (1955). Obviously, if Consolidation had felt that termination of transmission of coal slurry had no effect on its easement, it would have had no occasion to request the supplemental agreements to extend the defeasance clause.

It appears to us that these supplemental agreements properly read represented full recognition of the effectiveness of the defeasance clause by the parties themselves as of the termination of the transmission of coal slurry.

The judgment of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. It is clear to me that the easement was granted for the purpose of "constructing, maintain-ing, operating, altering, repairing, replacing and removing" a pipeline for the transportation of coal slurry. It is equally clear that the pipeline is still maintained for the transportation of coal slurry and that there has been no cessation of that use. The construction which the majority gives the instrument selects one of the seven stated purposes of the easement, operating, as the only purpose.

I am also unpersuaded that the parties have given a contrary construction to the instrument by their subsequent conduct. In the first place, the extension agreements provided

" . . . if at any time said pipeline *shall* cease to be used for the purpose . . . after [a stated date subsequent to the extension agreement], then all rights of the Grantee . . . shall cease. . . . " (Emphasis added.)

The use of this language indicates that the parties did not agree that the pipeline *had* ceased to be used for the purpose set forth in the granting instrument. Of more significance, however, is the fact that the extension agreements were executed, as the majority opinion recites, "to preserve the status quo . . . during negotiations," which concerned, in part, the transmission through the pipeline of products in addition to coal slurry. Further, evidence of settlement negotiations is inadmissible to prove facts material to the dispute which they concern.

Finally, I do not regard the amount of consideration paid for the easement in 1956 as relevant in ascertaining the parties' intent at that time. It appears that the land was completely idle and perhaps unsuited for any purpose other than as a right-of-way for a pipeline. Also, if the grantor should desire at any time to use the land, the grantee would be required to relocate the pipeline and right-of-way at his own expense. The value of an easement subject to relocation at the will of the grantor might be no more than the amount paid here.

But that fact is not material to the issue before us.

I would affirm the judgment of Judge Lambros.