The BANKING AND TRUST COMPANY, Plaintiff,

v.

John B. CONNALY, Jr., et al., Defendants.

Civ. A. No. 2495.

United States District Court, E. D. Tennessee, Northeastern Division.

June 15, 1972.

John S. McLellan, Jr., Kingsport, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., and Thomas W. Dillard, Asst. U. S. Atty., Knoxville, Tenn., for defendants.

## MEMORANDUM OPINION

NEESE, District Judge.

■■ This is an action for recoupment of money paid by the plaintiff banking institution to Mr. James Paul Monroe, a forger, in the redemption of United States savings bonds belonging to Mr. Arthur Kreiss. The plaintiff The Banking and Trust Company (Bank) at pertinent times was a banking corporation organized under the laws of Tennessee with its principal place of business in Jonesboro, Tennessee and an operating branch in Johnson City, Tennessee. The defendant Mr. Connaly is the Secretary of the Treasury, and the United States of America has been added hereto as an indispensable party. The jurisdiction of this Court has been properly invoked under 28 U.S.C. § 1346.* Trial was to the Court on October 29, 1971.

The salient facts are substantially undisputed. Mr. Monroe presented six stolen series E United States savings bonds, having an aggregate redemption value of $5,054, to Mrs. Geraldine Collins, a teller for the Bank, on February 7, 1968. She referred the matter to Mr. Jerry Taylor, an assistant vice president of the institution, who called Mr. W. D. Smith, the Bank's executive vice president in charge of its Johnson City branch, for assistance in the identification procedures.

Mr. Monroe presented to the Bank's officials the driver's license, the social security card, and credit cards of Mr. Kreiss, to establish the latter's identity. The bonds presented reflected that their holder resided in Teaneck, New Jersey, while the driver's license offered reflected that the licensee resided in Erie, Pennsylvania. Both Messrs. Smith and Taylor recognized that driver's licenses, social security cards and credit cards are entitled to little weight in establishing the bearer's true identity. Mr. Monroe advised Mr. Smith and/or Mr. Taylor that he required the funds from the bonds he was presenting for use in purchasing a coin collection from a citizen of the general area in which Johnson City is located; however, neither Mr. Smith nor Mr. Taylor made any effort to ascertain the identity of the bearer of the bonds through that or any similar source, extraneous to the aforementioned documents with which they were presented. Nonetheless, the Bank's officials redeemed the aforedescribed bonds.

On April 21, 1970, on instructions of the defendants, $5,054 was set-off from funds of the Bank in the hands of the Federal Reserve Bank of Atlanta, Georgia. By this action, the Bank undertakes to recoup such set-off fund. It is the finding of this Court that the aforenamed employees of the Bank failed to use ordinary care under the circumstances as shown by the evidence in redeeming the bonds presented to them by Mr. Monroe.

The Bank was designated as a paying agent of the United States for the pur-

---

* By memorandum to counsel of March 30, 1972, this Court raised the issue of whether either 31 U.S.C. § 757c(i) or 40 U.S.C. § 723 constituted an Act of Congress which gives this Court jurisdiction of the subject matter under 28 U.S.C. § 1346(a)(2). It appeared from the former-cited statutes that the administrative determination of the defendant Secretary of the Treasury might be final.

Counsel are agreed that the legislative history of the Public Debt Law of 1943 gives no indication that the action of the defendant Secretary is final and not

subject to judicial review. Neither 31 U.S.C. § 757c(i) nor 40 U.S.C. § 723, when considered in *para materia*, appears to provide for judicial intervention in such a decision of the defendant Secretary. " * * * Mere failure to provide for judicial intervention is not conclusive; neither is the presence of language which appears to bar it. * * * " Heikkila v. Barber (1953), 345 U.S. 229, 233, 73 S.Ct. 603, 605, 97 L.Ed. 972, 976 (headnote 2). In the situation at bar, this Court is now satisfied that it possesses jurisdiction of the subject matter.

pose of redeeming United States savings bonds. 31 U.S.C. § 757c(h). In consideration of this appointment, the Bank agreed to be bound by and to comply with the provisions of Treasury Department Circular No. 750, Revised, 31 CFR §§ 321.1–321.19, including all supplements and amendments thereto and instructions issued thereunder. A statement of December 19, 1947 by the Treasury Department, concerning identification of persons presenting United States savings bonds for payment and the liability of paying agents for losses resulting from the erroneous payment of such bonds, included the following:

\*  \*  \*  \*  \*  \*

2. Subject to other provisions of this statement a paying agent will be relieved of liability when it has noted on the bonds (or on a separate record) at the time of payment the facts of identification if: (1) an identification practice acceptable under the circumstances is shown to have been followed; and (2) the [Treasury] Department's investigation and the circumstances of the case disclose no factors tending affirmatively to show that due care was not exercised. \* \* \*

3. Acceptable identification includes, but is not limited to the following:

(1) personal identification as explained in paragraph 4;

(2) a pass issued by an employer (whose existence is known to the paying agent), bearing the photograph of the employee or an adequate identifying description, and his signature countersigned by some person purporting to be authorized by the employer, or bearing some other evidence of validation of the employee's signature, as, for example, a facsimile signature of a representative of the employer.

(3) an insurance policy having attached a photographic copy of the application therefor showing the insured's signature, and adequate identifying description;

(4) separation documents of Army, Navy, Marine Corps, and Coast Guard, that is, either a single separation document or two documents in combination, which set forth a physical description and witnessed signature of the recipient, or photographs of such documents under practically the same circumstances as prescribed in the case of Armed Forces Leave Bonds (see paragraph 10 of the instructions to paying agents governing Armed Forces Leave Bonds, copies of which may be obtained from the Federal Reserve Bank of the District);

(5) original (not duplicate) draft registration cards, that is, those cards bearing the registrant's physical description, signed by the registrant in the presence \* of the registrar, and signed also by the registrar;

(6) a customer of the paying agent, if known to or identified by the employee as being a customer whose account has been established for six months or longer or a customer whose identity was required to be established beyond any reasonable doubt at the time the account was opened.\*\* and

(7) motor vehicle operator's licenses or permits; greater care should be exercised in accepting this type of identification, since in many states a person can easily obtain a driver's license or permit without having to establish his identity to the agency issuing the license or permit. In any case of doubt other acceptable documents should be required for corroborative purposes.

---

\* This does not mean that paying agents are expected to ascertain that the registrant actually signed his name in the presence of the registrar. \* \* \*

\*\* This deals with payment to a customer. See paragraph 4 for the identification of someone by a customer.

It should be ascertained that any physical description or photograph on an identification document fits the person presenting the bond, and while paying agents' employees are not expected to be handwriting experts, that there is a reasonable similarity between the signature known to have been placed on the bond *by such person* and that appearing on the identification document and that any such documents do not bear signs of alteration. A recently issued document should be a cause for additional care.

\* \* \* \* \* \*

5. Unacceptable identification includes, but is not limited to, social security cards \* \* \*, and, in general, any kind of card or alleged identification which does not contain a witnessed, or otherwise validated, signature or which is easily obtainable without the person in whose name it is issued having to establish his identity. Generally, these cards will not be considered acceptable by themselves or in combinations thereof.

6. Paying agents will not be relieved of liability for losses resulting from erroneous payments in cases which involve a violation of the governing regulations and instructions. \* \* \*

It is patent, at the very least, that the foregoing excerpts instructed paying agents of the Treasury Department as to the degree of care their personnel were to exercise in identifying persons under 31 C.F.R. § 321.8. This clear contract language itself reveals the intent of the parties, so there is no need to turn to rules of construction. *Cf.* Pavlik v. Consolidation Coal Co., C.A. 6th (1972), 456 F.2d 378, 380[2].

■ Although it is undisputed that this document was published 23 years before the episode now under considera-

tion, the Bank's officials testified under oath that they had not seen such at any time before the commencement of this lawsuit, and that they since had searched their files unsuccessfully for same.\*\*\* Unless the Bank's personnel were aware of these supplemental instructions, such never did become consensual between the contracting parties. See 17 Am.Jur.2d 935, Contracts, § 465.

■ Even without notice of this circular, Messrs. Smith and Taylor testified that they were aware that neither drivers' licenses, social security cards or credit cards provided bases of identification in banking transactions requiring the identification of a bearer. This Court is of the opinion that these Bank officials did not exercise in the premises that degree of care which ordinarily prudent bankers would exercise under similar circumstances; Mr. Monroe presented bonds with a comparatively large redemption value; he was a stranger to the Bank's personnel; he presented bonds with a New Jersey mailing address and a driver's license with a Pennsylvania address; the social security and credit cards he presented provided virtually no corroboration of the driver's license. The aforenamed Mr. Smith was a former Tennessee highway patrol officer, who had seen bogus driver's licenses. This Bank's personnel rejected credit cards as a means of identification for cashing checks. They simply did not exert due care in cashing these forged bonds.

■ The Bank offers as an additional exhibit a news letter issued by Treasury Department personnel, under date of October 1, 1971. The purport of this document is that a new identification guide for cashing United States savings bonds sets forth new standards for such procedures and supersedes the aforementioned

\*\*\* Although it is not pertinent to the disposition hereof, the Court notes that 5 U.S.C. § 552(a)(1), (5), which exempts from publication in the Federal Register "\* \* \* inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency \* \* \*", is applicable to the issue under consideration, as the Bank is not an agency of the federal government, and such memoranda are available to the general public, should someone desire to obtain them.

document of December 19, 1947. Obviously, this later document cannot be considered on the issue of the exercise of due care on February 7, 1968. The Court does not consider such belatedly-offered document as evidence herein. *Cf.* Davis v. Yellow Cab Company of St. Petersburg, C.A. 5th (1955), 220 F.2d 790, 791[6].

The plaintiff Bank must be, and hereby is, denied all relief. Rule 58, Federal Rules of Civil Procedure.