### FOX v. COGGESHALL et al.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

**1. LEASE—REFORMATION—MUTUAL MISTAKE.**

In an action by a lessee to reform a lease, it appeared that the premises were leased through a broker for the purpose of conducting a sponging business therein; that the broker brought to the lessee, to be executed, a lease stipulating that the lessors were to furnish "4 horse power" steam; that the lessee objected to the phrase, stating to the broker that he must have 60 pounds' pressure, and that he did not know that 4 horse power was equivalent to that; that the broker assured him "4 horse power" and "60 pounds' pressure" meant the same, but that the lessee

refused to sign the lease until there was inserted in it, after the words "4 horse power," the words "or 60 pounds' pressure"; that after the execution of the lease the lessors furnished the lessee 60 pounds' pressure for over a year, until after the lessors' boiler was used up and commenced to leak, and they were unable to furnish 60 pounds' pressure, whereupon the lessors claimed that by furnishing 4 horse power they were complying with the terms of the lease. The broker testified that he did not know there was any difference between 4 horse power and 60 pounds' pressure. There was proof on behalf of the lessee that his sponging business could not be conducted without a steam pressure of 60 pounds, and one of the lessors' witnesses testified that, with respect to spongers, they always contracted to furnish a given pressure. There was also proof that the terms "60 pounds' pressure" and "4 horse power" had no connection. *Held* sufficient to entitle the lessee to a reformation of the lease by striking out the words "4 horse power," inserted by the mutual mistake of the parties.

Appeal from Special Term, New York County.

Action by William Fox against Edwin W. Coggeshall and another for reformation of a lease. From a judgment for defendants, plaintiff appeals. Reversed.

The action was brought by the plaintiff, as lessee, against the defendants, as lessors, for the twofold purpose of reforming a lease of premises occupied by the plaintiff in the city of New York, and of recovering damages in the sum of $3,000 alleged to be due for the breach of the lessors' covenants therein contained, after obtaining reformation thereof.

The plaintiff leased the premises for a period of three years from February 1, 1901, at a rental of $1,500 per annum; and as the business in which he was engaged was that of sponging cloth, or passing steam through it to shrink it, the lease stipulated with respect to the defendant's furnishing steam as follows: "The parties * * * will furnish * * * four (4) horse steam power or sixty (60) lbs. pressure to be supplied through 1½ inch pipe to the stone floor to be used for sponging purposes from the hours 6:30 a. m. to 6 p. m., each working day during the year. * * *" The plaintiff testified that in 1901 he was with a Mr. Moss in the cloth-sponging business, and desired to rent premises, and the defendants' broker, Spyr, came, and they told him they would need 60 pounds of pressure of steam all day long to do their business, which required that pressure, and he returned, saying the owners would rent for $2,000; that they objected to this, because of the high insurance rates, and so, upon telephoning the owners, the amount was reduced to $1,500, and the next day Spyr came to draw up the leases; that he put down "four horse power," and plaintiff objected, saying he knew nothing of horse power, and didn't ask that, but wanted 60 pounds' pressure, and Spyr said the engineer told him 15 pounds equaled 1 horse power, and 4 horse power would be 60 pounds, but it was no difference to him, and he would put down "60 pounds," which he did, preparing a new lease; that the lease was so signed, and they entered into possession, and there was no trouble about the pressure for over a year, but from February 13, 1902, to May 20, 1902, the pressure decreased so that it was impossible to do all their work, and they sustained loss in consequence; that in December, 1902, Moss left the business to him. Mr. Moss testified that Spyr had "4 horse power" in the lease, and they objected, and said they wanted 60 pounds' pressure, and he said he would furnish all the steam needed, and could furnish 60 pounds, and would as leave put down 60 pounds, and did so, and none of them knew there was any difference between the terms; that the pressure gave out in February, 1902, and they sustained financial loss. A Mr. Leo, who was present, testified that Spyr put in "4 horse power" instead of "60 pounds," and objection was made, and Spyr said it was the same thing, but plaintiff insisted on having the words "60 pounds" put in, and it was done. The plaintiff also gave evidence of a police boiler inspector, who said he examined the boiler in February, 1902, and "they wanted 60 pounds," but the boiler would not stand it, and leaked, and he ordered the tubes repaired, which was done, and the pressure was cut down to

50 pounds in the certificate, and verbally he told them 35 or 40 pounds; that there is no connection between the terms "4 horse power" and "60 pounds' pressure." O'Neill, who ran the boiler, says that every morning he had the pressure at 60 pounds when the spongers arrived, and he tried to keep the pressure up to 60 pounds, but finally the boiler gave out, and was repaired, the pressure becoming less, whereupon plaintiff objected, as they needed 60 pounds in their sponging business. Two other witnesses testified that 60 pounds was essential to do the business, and it was customary, in furnishing steam for such business, to state pressure needed, and figure the costs; that it was not customary to make any intimation as to quantity, but simply the pressure.

The defendant Schmidt testified that the lease was made through the broker, Spyr, and that personally he knew nothing about the relation between 4 horse power and 60 pounds' pressure; that the boiler gave out, and repairs were made, and finally a new boiler was put in May 20th.

Mr. Spyr testified that the plaintiff mentioned 4 horse power to him, and he knew little about it, and asked the engineer, who said that power could be furnished; that he put "4 horse power" in the lease, and then the plaintiff said that would have to be changed, as he needed 60 pounds' pressure, and so he went to the engineer, who said he could give 60 pounds' pressure, and then he wrote in the lease "4 horse power or 60 pounds' pressure," and got the lessee to sign it, and thereafter submitted it to the lessors, who then signed the lease; that he did not tell plaintiff that 4 horse power was equivalent to 60 pounds' pressure, but that he declined to sign with 4 horse power, and so he wrote in the 60 pounds' pressure, as he said he would have to have that in his business, and he did not know the difference.

It further appears from the defendants' evidence that the boiler used was 15 horse power, and one of the lessors testified that when objections were made he called the engineer's attention to the decrease, and told him to keep up the pressure, but this was impossible, as the boiler leaked so that repairs had to be made, and finally, in May, a new 70 horse power boiler was put in. An expert testified for defendants that there was a great difference in the cost of furnishing an unlimited quantity of steam at 60 pounds' pressure through 1½ inch pipe, and furnishing 4 horse power, the cost of the former being about $3,000, and the latter about $120, and steam is sold by quantity generally. A witness of defendants, who said he rented steam power, testified that 4 horse power was worth about $300, but that, with respect to spongers, they always contract to furnish a given pressure through a given pipe, as that is the only way to determine it, and 50 or 60 pounds was ordinarily required.

The court found that the defendants had no intention of furnishing steam, other than 4 horse power, and gave judgment for the defendants, from which judgment the plaintiff appeals.

Argued before HATCH, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Henderson Peck, for appellant.
Sanford Robinson, for respondents.

O'BRIEN, J. The complaint, after setting forth the lease in extenso, alleges that the clause therein contained relating to the supply of steam by the lessors should be reformed by eliminating therefrom the words and figure "four (4) horse," on the ground of mutual mistake and inadvertence of the plaintiff and the defendants. It will be noticed, therefore, that there is no claim of fraud or deceit practiced by the defendants in inducing the execution of the lease, but the question presented is as to whether the words "four (4) horse power" were inserted in the lease by mutual mistake. It will be further noticed that in the lease itself the covenant of the defendants

is in the alternative, and under it the defendants agreed to furnish "four (4) horse steam power or sixty pounds' pressure." A review of the testimony will show beyond cavil that, in the negotiations which led up to the making of the lease and the insertion of this alternative covenant, it was thought and understood by the plaintiff and the broker who represented the defendants that its terms were equivalent, and that it was only after more than a year, when the defendants failed and neglected, owing to the inability of their boiler, to then supply 60 pounds' pressure, that attention was called to the fact that 4 horse power was not the equivalent of 60 pounds' pressure. Upon the trial it was conceded that the two terms are entirely different in meaning and application, "4 horse power" expressing quantity of steam, and "60 pounds' pressure" the quality or pressure at which the steam is delivered. It was also established that in the plaintiff's business what was needed was steam through a 1½ inch pipe, supplied as needed during the day at 60 pounds' pressure.

The respondent states the rule correctly, that, in order to justify the interposition of a court of equity in undertaking to reform a contract in writing, the evidence should be clear and convincing—such as to leave no reasonable doubt as to the mutual mistake. The burden of producing satisfactory evidence rested upon the plaintiff, and, in our opinion, he has successfully sustained it, because it is seldom, if ever, that a case is presented wherein a mutual mistake has been so satisfactorily proved.

According to the plaintiff, the words "four horse power" were in the lease when first presented to him by the broker, and he then objected to them upon the ground that he did not know what these words meant, and that what he needed and must have in the conduct of his business was 60 pounds' pressure of steam; and he insisted that the covenant to supply that amount of pressure should be inserted in the lease, which was done, and the other words were allowed to remain upon the assurance of the broker that 1 horse power equaled 15 pounds' pressure, and 4 horse power would be equivalent to 60 pounds' pressure. It was upon this representation as to the terms being equivalent, which was undoubtedly relied upon by the plaintiff, and which we must assume that the broker himself believed, that the words "four horse power" were allowed to remain in the lease. We do not, therefore, agree in the contention of the respondent that this evidence fails to show that there was any mistake on behalf of the defendants in adopting the phraseology appearing in the lease relating to the supply of steam. The defendants were represented in the transaction by their broker, and as the agreement was arranged between the plaintiff and the broker, representing the defendants, the latter's acts and understanding of the meaning of the language used and its purpose are binding upon the defendants. The broker's testimony shows that he did not know the difference between 4 horse power and 60 pounds' pressure, and all the surrounding circumstances support the plaintiff's version that he refused to sign the lease with the words "four horse power" in it, until there was also inserted the covenant as to the 60 pounds' pressure. Unless the parties understood these terms to be equivalent, it is difficult

to see any reason for inserting them in the lease, since they differ in meaning and application. What the plaintiff needed was sufficient steam for his business of sponging cloth, and this required 60 pounds' pressure of steam. Moreover, one of the defendants' witnesses, who rented steam, testified that, with respect to spongers, they always contracted to furnish a given pressure through a given pipe, because it was the only way to determine the amount to be supplied, and that 50 pounds was the ordinary requirement. The lease itself states that the sponging business was to be carried on, and the uncontradicted testimony is that this could not be done with less than 60 pounds' pressure. But the most significant fact, as indicative of the construction which the parties themselves placed upon the covenant in the lease, is that for more than a year, though it was attended with trouble and expense, the defendants actually furnished the 60 pounds' pressure; the engineer's testimony being that every morning he saw to it that 60 pounds was ready for the spongers when they arrived for work, and that he worked the boiler hard to keep up that pressure. It was only after the boiler had been used up and commenced to leak, and was unable to furnish 60 pounds' pressure, that the defendants fell back upon the alternative provision in the lease of 4 horse power, and insisted that in furnishing that amount of steam they were complying with their lease, regardless of the amount of pressure.

It has been many times held that the practical construction put upon a contract by the parties to it is sometimes almost conclusive as to its meaning (Nicoll v. Sands, 131 N. Y. 24, 29 N. E. 818), and that there is no surer way to find out what the parties mean than to see what they have done (Insurance Company v. Dutcher, 95 U. S. 273, 24 L. Ed. 410).

The entire evidence, including the nature of the plaintiff's business, the custom in furnishing steam for that business, the way in which the lease was made, and the conduct of the defendants in supplying for over a year the pressure needed, seems to us to point with unerring certainty to the fact that the words "four horse power" were inserted in the lease as the result of a mutual mistake, and that the plaintiff was entitled to have the lease reformed by striking out therefrom those words.

The question of damages, if any, to which the plaintiff would be entitled, is not before us upon this appeal; the judgment having been for the defendants.

The judgment accordingly should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.