(166 App. Div. 342)

### FAGAN et al. v. ULRICH et al.

(Supreme Court, Appellate Division, Third Department. March 3, 1915.)

1. SPECIFIC PERFORMANCE ⬦⟹28 — CONTRACT ENFORCEABLE — UNCERTAINTY — CONSTRUCTION BY PARTIES.

　　The long-continued practical construction of an indefinite contract for sale of property by the parties may render such contract sufficiently certain to permit specific performance.

　　[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 61–68; Dec. Dig. ⬦⟹28.]

2. CONTRACTS ⬦⟹163—CONSTRUCTION—PRINTED FORMS—WRITING.

　　Where a contract is on a printed form, blanks being filled in by writing, in case of uncertainty, printed matter is controlled by the written.

　　[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 745; Dec. Dig. ⬦⟹163.]

3. SPECIFIC PERFORMANCE ⬦⟹121—EVIDENCE—SUFFICIENCY.

　　Evidence of performance of a contract for sale of property *held* to show a practical construction of an indefinite contract, permitting its enforcement.

　　[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 387–395; Dec. Dig. ⬦⟹121.]

4. VENDOR AND PURCHASER ⬦⟹232—BONA FIDE PURCHASER—NOTICE—POSSESSION.

　　Where property which defendants had agreed to sell to plaintiffs had been in plaintiffs' possession for 10 years, and they had been assessed and had paid the taxes, and had their name in large gilt letters on the front porch, such facts were sufficient notice to one claiming as a bona fide purchaser.

　　[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–545, 548–562; Dec. Dig. ⬦⟹232.]

Appeal from Trial Term, Schenectady County.

Bill by Mary E. Fagan and another against Charles E. Ulrich and others. From a judgment for defendants, plaintiffs appeal. Reversed, and judgment directed for plaintiffs.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

---

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward D. Cutler, of Schenectady (R. J. Landon, of Schenectady, of counsel), for appellants.

Loucks & Alexander, of Schenectady (William Dewey Loucks, of Schenectady, of counsel), for respondents.

John R. Parker, of Schenectady, for respondent Grace G. Parker.

JOHN M. KELLOGG, J. The action was brought for the specific performance of a contract made August 9, 1904, for the sale by the defendant Ulrich to the plaintiffs of the Ulrich Block (now called the Fagan Block) in the city of Schenectady. By the terms of the contract the plaintiffs paid $200 down, and on the 1st day of September thereafter were put into possession of the property, and have since remained in possession, paying the taxes, insurance, and interest from time to time, and small payments on the principal, aggregating $1,500. The vendor has never objected to the manner in which payments were made, or requested other payments. On the 10th day of January, 1914, the vendor conveyed the premises to the Ingalls Realty Company, which in turn conveyed the same without notice to defendant Parker, while the plaintiffs were in possession under the contract.

[1, 2] The Special Term held, in substance, that the contract was so indefinite by its terms that equity could not decree a specific performance. The court overlooked, we think, two important considerations.

(1) The practical construction of this contract by the parties for 10 years removes any uncertainty as to its real meaning. "It has been many times held that the practical construction put upon a contract by the parties to it is sometimes almost conclusive as to its meaning (Nicoll v. Sands, 131 N. Y. 19, 24 [29 N. E. 818]), and that there is no surer way to find out what the parties mean than to see what they have done (Insurance Co. v. Dutcher, 95 U. S. 269, 273 [24 L. Ed. 410])." Fox v. Coggeshall, 95 App. Div. 410, 416, 88 N. Y. Supp. 676, 680.

(2) Where a contract is upon a printed form, blanks being filled in by writing, in the case of uncertainty as to the true meaning of the contract, the printed matter must give way to the written. Heyn v. New York Life Ins. Co., 192 N. Y. 1, 84 N. E. 725.

[3] The case in itself is peculiar. The contract was made and acknowledged between Hugh J. Fagan, the agent of the plaintiffs, and Ulrich, August 11, 1904. On December 12, 1904, a new contract was prepared in substantially the same manner, naming the plaintiffs as the purchasers, instead of their agent. There is no suggestion of any fraud, mistake, or misunderstanding as to the terms written in the contract. It is not suggested that anything in the minds of either of the contracting parties at the time was omitted from the contract. It therefore expresses their intent, if they had any reasonable intent. The fact that about four months after it was executed it was rewritten and re-executed in substantially the same manner leaves little room to infer that any omission was made in reducing the agreement of the parties to writing. It therefore expresses the intention of the parties, and the only question is: What did they mean? In this case their acts speak more plainly than the language they used.

The contract is upon a printed form, with many blank spaces. Some of the blanks are filled in with typewriting. No attempt has been made to fill most of them. The printed parts of the contract which were not filled cause the uncertainty, and, if the court had been called upon to construe the contract before the parties by their action had interpreted it, some difficulties might have arisen. But, disregarding the printed parts of the contract which have not been filled in, enough remains to indicate the clear intent of the parties. The premises and the price are certain. The confusion, if any, arises as to when the payment of principal and interest are to be made. When we remember, however, that the plaintiffs have paid all the principal and interest ever requested, and have tendered full performance of the contract according to any possible construction of it, it is difficult to see how a court of equity can treat the contract as a nullity after 10 years of performance and when the property has increased in value from $42,000 to $65,000 or $70,000.

After containing the agreement to sell and buy, a description of the premises, and the price to be paid, $42,000, the printed form proceeds as to the payments to be made:

"In the manner following, that is to say: The sum of　　　dollars to be paid on the　　　day of　　　, 190　, or sooner, and the sum of　　　dollars on the　　　day of　　　, 19　, and the sum of　　　dollars on the　　　day of　　　, 19　, with interest on all sums unpaid from the　　　day of　　　, 190　, payable with each of said payments."

These blank spaces are filled in only so that the first payment is $200 and the date thereof, September 1, 1904, and in the provision for interest the date is made October 1, 1904. Then the printed form, with many blank spaces, provides in substance that upon making the payments a deed is to be executed, "and the remainder, being the sum of　　　dollars, is to be secured by bond and mortgage." The sum written in the blank before "dollars" is "37,000." The other blanks in the form as to the bond and mortgage are not filled in, but the provisions as printed cover about a page of the record. The last part of the printed clause provides for interest and tax assessment clauses in the mortgage, and continues, "and shall be conditioned to pay." Here follows a blank of four lines and then the printed words, "with interest at the rate of　　　per cent. per annum payable and to be computed from the　　　day of　　　, 190　." The above blanks are filled in by the typewriter, so that the clause reads, "with interest at the rate of six per cent. per annum, payable monthly, and to be computed from the first day of October, 1904," to which is added in typewriting:

"With the privilege of paying any sum on the principal, on any interest day. When the sum of five thousand ($5,000.00) dollars is paid, the party of the first part agrees to deliver to the party of the second part a warranty deed of said premises, and to take back a purchase-money mortgage on the above-named terms."

The printed form then continues about the possession, the payment of taxes and assessments, and that the vendee will quit possession in case he is in default, with a clause as to liquidated damages, which by the writing are stated to be $2,000.

It is urged that uncertainty exists as to what payments are to be made after September 1st, the blanks in that respect being unfilled. If the printed matter where the blanks are not filled in is disregarded, it would seem that interest was to begin to run on the $41,800 unpaid on the 1st day of October, 1904, possession to be given on the 1st day of September, 1904, with interest to be paid monthly at the rate of 6 per cent., with the right to pay any part of the principal when the interest is paid, and that when the payments amount to $5,000 the deed and bond and mortgage are to be given; the vendee to pay taxes, assessments, and insurance. It is urged that maybe the parties intended that after possession was given, and before the 1st day of October, 1904, $5,000 was to be paid. There is no such agreement; it might be inferred. We are not called upon, however, to make any inference as to what the intent of the parties was in that respect. Their actions make the intent plain. The $200 was paid, possession was delivered as stated in the contract, interest has been paid in monthly installments, when not paid upon the day no fault was found, but it was paid later, and payments of principal have been made from time to time.

The parties construed the contract as providing for a sale of the property, with an indefinite time for the payment of the principal, but with interest to be paid monthly, the insurance and taxes to be kept up. When sold, the property was but partly occupied. Perhaps such terms were not unreasonable, but the parties were at liberty to make a contract by its terms unusual if they chose. If we infer that the first blanks were to be so filled in that the $5,000 was to be paid on or before October 1st, the parties had the right to waive those provisions, and we are not called upon to put words into a contract when the manner of trial concedes that nothing has been omitted. If the parties have waived the provision, it is immaterial what it was. If the parties intended that certain definite payments should be made before October 1st, they also intended that the entire purchase price might be paid in any month thereafter. The specific payments having been waived, a tender of the entire purchase price, with interest, is a tender of performance. The plaintiffs have tendered the $5,000, offered to give a mortgage for the balance, suggested that the defendant fill into the mortgage his own terms of payment, and have tendered the cash and interest necessary to satisfy the contract.

[4] We conclude, therefore, that upon the facts shown, considering the acts and conduct of the parties, the plaintiffs were duly performing the contract at the time Ulrich breached it, and have tendered performance according to the terms of the contract as interpreted by the parties. The contract is not, therefore, so indefinite that it cannot be specifically performed. The property has been assessed to the plaintiffs. They were in possession, have paid the taxes, and had upon the front door, in large gilt letters, the words "Fagan Block." It would seem that no one can claim to be a purchaser in good faith and without notice under such circumstances.

The defendant Parker was not sworn, but produced a witness who examined the records for her and swore as to their contents and that

he informed her thereof.  The judgment should be reversed upon the law and the facts, and a judgment entered directing the defendants to transfer the property to the plaintiffs upon the payment of the unpaid purchase price and interest, with costs to the plaintiffs.  The court disapproves of the finding of fact that the contract is so indefinite and uncertain in its terms that the court cannot decree its performance, and that the defendants Ingalls Realty Company, Grace E. Parker, and the Schenectady Savings Bank are purchasers in good faith, without notice of the plaintiffs' rights, and finds that by the facts they were charged with notice of plaintiffs' rights.

Judgment reversed on law and facts, and judgment ordered directing defendants to transfer property to the plaintiffs upon the payment of the unpaid purchase price and interest, with costs to the plaintiffs. The amount due may be inserted in the order on settlement, if the parties do not stipulate.  The court disapproves of the finding of fact that the contract is so indefinite and uncertain in its terms that the court cannot decree its performance, and that the defendants Ingalls Realty Company, Grace E. Parker, and the Schenectady Savings Bank are purchasers in good faith, without notice of the plaintiffs' rights, and finds that by the facts they were charged with notice of plaintiffs' rights.  All concur.