Chittenden, J.
This is an action brought by the plaintiff for the specific performance of a contract for the sale of real estate, and to reform such contract if the court finds that it does not, as written, obligate the owners of the property to convey the entire title, including the dower interests of the wives of the two owners, as claimed by •the plaintiff. The prayer of the petition also asks, if it is found to be impossible for the defendants or either of them to comply with the terms of said contract by delivering full title to said property, including the dower interests of their respective wives, that the court will ascertain the extent of plaintiff’s damage by reason of such breach of contract by the defendants, or either of them, and in lieu of specific performance of said contract award plaintiff judgment against the defendants for his damages. There is also a prayer for all other and further relief to which the plaintiff may be entitled.
The contract sought to be enforced, as originally drawn, reads as follows:
*463 “Jan. 31, 1917.
“We and each of us hereby give to Alva B. Caple the sole and exclusive right to purchase the land known as 104.52 acres more or less, reserving entrance to 20 acres on west of said tract to be not more than 100 feet wide along west side of 104 acres, all in Perrysburg Township, Wood Co., Ohio, lying west of land of Alva B. Caple and south of Whitmore tract & Crane 40 acres with barns.
“Land shall be surveyed by Joe Hofman and price shall be $175.00 per acre cash, according to survey.
“Purchaser shall pay June, 1917, taxes and assessments and subsequent payments. Each party shall pay F. G. Crane as agent one per cent, of purchase price.
“Sellers reserve right to cut off all timber if. removed within 30 days.
“Deal to be closed and deed and abstract offered within 30 days if option accepted. Option offered for three days, unless accepted by February 3rd shall be void. Abstract shall not be continued nor sellers pay anything extra on 'costs of suit to quiet title.”
The option as finally signed by all the parties had been altered by erasing the words “for three days” in the last paragraph and changing the date “February 3rd” to February 28th. At the bottom of the option as finally executed was written: “February 23rd, 1917, above accepted, Alva B. Caple.”
Two principal defenses are interposed by the defendants:
*464 First. That there was no authorized delivery of the contract to the plaintiff and that the option .offer was not accepted within the time limit set forth in the option.
Second. That the option not having been signed by the wives of the defendants, and they refusing to join in the execution of a deed for the property, the contract is not «subject to enforcement by decree of specific performance against the husbands, providing for an abatement from the purchase price of the value of the dower interests of the wives.
The evidence shows that shortly before January 31, .1917, Frank G. Crane, an attorney of the city of Toledo, was acting as the attorney and agent of the defendants. He- inquired -of Caple ■whether he would consider the purchase of the property, whereupon Caple advised him that if he would have a written option prepared and signed by the defendants that he would advise him at once whether or not he would accept their offer, but he declined to make any offer for the property himself. On January 31, after discussing the matter with Isaac Crane,- Irving J. Crane called at the office of Frank Crane, and after a consultation Frank Crane wrote the option in question. Thereupon Irving took -the option to the home of his brother Isaac, where it was read to Isaac by his wife. Irving then took the option with him to his home, and he testifies that he signed it at four-thirty a. m. on February 2, after which he laid it upon the clock shelf, where it remained for some days, until Isaac called at the house of Irving. As Isaac was leaving Irving took the *465 paper from the shelf and handed it to Isaac, saying, “Here is that option.” It is claimed that nothing further was said with reference to it at that time. Isaac took the option home where it remained on his mantel for some days. He finally took it to the office of Frank Crane, and there the words were erased and the date changed, as above indicated. After this was done Isaac signed the option, and it was on the following day presented to Caple by Frank Crane. Caple asked to have some modifications made in the ' option, which Frank endeavored to have made, but without success. Thereupon, on the next day, Caple signed his acceptance of the option. Shortly thereafter Irving Crane declined to go forward with the option, and thereupon his brother Isaac also declined to carry out the agreement.
Irving Crane claims that the option was not delivered by any authority from him; that the time limit had expired before the delivery to Caple; and that it was, therefore, not a valid option and the acceptance by Caple did not effect a contract.
In view of the evidence adduced, we are unable to-accede to this contention. Irving Crane’s testimony is not at all convincing upon this phase of the case. It is inconceivable that he should have handed the contract to his brother without any further comment than that above quoted, if he expected that nothing further was to be done with it to carry out the offer therein contained. It is evident that Isaac obtained no such impression from the occurrence, because he later took the bption to Frank Crane, arid, after having the date *466 of the limitátion -changed, signed the option himself, and left it, as he says, to be submitted to Caple, -with the understanding and belief that both ■himself and his .brother were then making an offer to Caple for the sale of this property.
Mr. Frank Crane testifies that he talked with Irving Crane over the telephone, and that at that time Irving said, “It is all wrong, but I suppose we will have to go through with it.”
The conclusion is irresistible from an examination of the evidence that the determination on the part -of Irving to repudiate the offer was formed after its acceptance by Caple, and -when perhaps his wife had made a positive refusal to join in a deed of conveyance. We find without hesitancy from the evidence that the option was signed by both the defendants and delivered to Frank Crane for the purpose of extending the written offer therein contained to Alva Caple.
The evidence shows conclusively that this option, which was hurriedly prepared, was intended by both defendants, and so understood by plaintiff, to provide for the sale and conveyance of the property and the giving of a good and complete title to the plaintiff, free from the dower interests of the defendants’ wives, and we hold that the option as accepted constitutes a valid contract between the parties, calling for the conveyance to the plaintiff of the property with that -character of title.
With respect ‘to the prayer of the plaintiff’s petition, that the court by its decree should reform the contract, we think it is only necessary to say that our construction of the contract gives it all *467 the scope that it would have if it were' reformed along the lines suggested by plaintiff. (Moore v. Moulton, 2 Weekly Law Bulletin, 323, 325, 6 Am. L. Rec., 466, 5 Dec. Rep., 534.) We entirely approve the language of Judge Tilden found in his discussion under his subdivision five.
The defendants were both married and living with their wives at the time of the execution of this contract, and this fact was well known to the plaintiff, whose wife is a sister of the defendants. The option was not signed by the defendants’ wives and there is no evidence tending to show that they ever agreed to sign the option or to join in a deed conveying the property. There is some evidence indicating that the wife of Isaac would have been willing to join in a deed if the transaction had gone through without difficulty. The wife of Irving says that she positively refused to join in a deed when the option was shown to her on the evening of January 31, and that she has ever since maintained that attitude. At the time of the trial Isaac’s wife also said she would not join in a deed for this property.
This presents an important and somewhat difficult question, namely: Shall a decree of specific performance be entered against the defendants requiring them to execute a deed in which their wives shall join; or, if the wives refuse to join, a decree of specific performance against the husbands, with an abatement from the purchase price sufficient to cover the present worth of the contingent right of the dower of the wives?
In the consideration of this question we have examined many authorities and find those author *468 ities not in accord upon this subject. The defendants rely largely upon the case of People’s Savings Bank Co. v. Parisette et al., 68 Ohio St., 450, claiming that the present case comes within the second proposition of the syllabus in that case. Counsel for plaintiff seek to distinguish the facts in that case from those in the case under review, and assert that by reason of the difference in the facts the case is not an authority and is not controlling in this case. After a very careful consideration of the case of Savings Bank Co. v. Parisette we are unable to find a sufficient difference in the principal facts to justify us in declining to follow that case as an authority. The plaintiff knew that he was dealing with the husbands alone. He knew that they were married and that their wives could not be compelled to sigh a deed, and that, therefore, the contract was impossible of specific execution if construed to include their dower interests. Such were also the controlling facts in the Parisette case. The court in the opinion in that case calls attention to the fact that the effect of making an abatement would result in' an attempt to arrive at a sum to be deducted by a process admittedly speculative, or with an alternative of suspending a considerable portion of the purchase money to the seller during the joint lives of himself and his wife. The supreme court recognizes in its decision that a different rule prevails in a number of states, but we think that it deliberately announced a rule in this state which precludes the specific performance of a contract for the sale of real estate executed by a husband whose wife does not join in signing *469 the contract of sale and. refuses to join in the execution of a deed. This rule is subject to the qualification that such refusal upon the part of the wife shall not be the result of fraud or collusion upon the part of the husband and the wife.
The supreme court, in the case above, cites many authorities in support of its conclusion. Among others are Riesz’s Appeal, 73 Pa. St., 485. The same rule is also announced by the supreme court of Pennsylvania in Burk’s Appeal, 75 Pa. St., 141, and in Burk v. Serrill, 80 Pa. St., 413. We also add the case of Graybill v. Brugh, 89 Va., 895.
We therefore conclude that the case of Savings Bank Co. v. Parisette is a controlling authority in this case.
The evidence fails to show any fraud or collusion between the husbands and wives bringing about the refusal of the wives to join in the execution of a conveyance. The evidence also fails to show such knowledge and concurrence in the option on the part of the wives as to bind them in any way in the execution of the option. In any event the wives are not made parties to this action and therefore any decree made in this case would not be binding upon them.
The failure of this court to give relief to the plaintiff by a decree of specific performance does not mean that the plaintiff is without a remedy in this court in this case. The evidence shows a breach of a valid contract to convey to the plaintiff the full title to the property described in the option, and the plaintiff is entitled to recover any and all damage that he may have sustained as a *470 direct result thereof. The authorities are numerous to the effect 'that where an action is brought in good faith for specific performance, and the court declines to grant that relief, damages may be awarded to the plaintiff for a failure upon the part of the defendant to carry out the terms of the contract. We call attention to Sternberger et al. v. McGovern, 56 N. Y., 12. In the code states where the distinction between actions at law and in equity is abolished it is unnecessary to dismiss the action and remit the party to a court of law to obtain damages. In this state there is but one form of action, namely, a civil action, and! the same court administers the relief to which the pleadings and facts show the party to be entitled. The petition in this case is broad enough to justify the court, if the evidence so warrants, in awarding damages.
No evidence has been introduced in this case upon the subject of damage sustained by the plaintiff, it being agreed that if it became necessary to take testimony upon the subject it would be done later. It has been the practice of this court to remand causes to the court of common pleas for the purpose of ascertaining damages when that relief became necessary, and that will be the practice followed in this case.
A decree may therefore be drawn refusing specific performance of the contract and remanding the case to the common pleas court for the purpose of ascertaining the damages to which the plaintiff may prove himself entitled.

Judgment accordingly.

Richards, J., concurs.