No. 23,132.

SALLIE B. ELLIS, *Appellee*, v. THE FRATERNAL AID UNION, *Appellant*.

SYLLABUS BY THE COURT.

1. BENEFIT INSURANCE—*Forfeiture of Membership by Engaging in Military Service—Forfeiture Lawfully Waived "During Period of War."* A fraternal beneficiary society which had a constitutional provision that if a member engaged in military service it would operate to forfeit his membership, adopted a resolution that the provision "be and the same is hereby suspended and repealed" during the period of the war, and afterwards it contested a claim for a benefit on the life of a member who had entered military service and had died of wounds received in action in France, prior to the adoption of the resolution.

*Held,* that the resolution was retroactive in its operation and that the beneficiary was entitled to recover on the certificate.

2. SAME—*Resolution Waiving Forfeiture "During Period of War"—Interpretation Question of Law.* The force and effect of the resolution was a question of law for the trial court, and no error was committed by the court in instructing the jury that the pleaded fact that the member had entered military service was not a defense.

3. SAME — *Time of Paying and Receiving Assessments — Estoppel.* Nor was any error committed in instructing the jury that if the defendant or its agent, by a course of conduct in transacting its business with its members, led the insured to believe that assessments might be paid in a particular manner and at times other than those specified in the by-laws or contract, it would be estopped to claim a forfeiture because the assessments were not paid strictly at the times and in the manner prescribed in the by-laws.

4. SAME—*Instructions.* Other rulings in charging the jury are held to be without material error.

5. SAME—*Evidence Supports Finding of Payment of Assessment.* The evidence examined, and it is held that the evidence is sufficient to support a finding of a payment of the assessment in question.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed April 9, 1921. Affirmed.

*George R. Allen,* of Kansas City, for the appellant.

*M. A. Gorrill,* of Lawrence, for the appellee.

The opinion of the court was delivered by.

JOHNSTON, C. J.: This is an action by Sallie B. Ellis to recover on a beneficiary certificate issued by the Fraternal Aid Union on the life of her son, Ralph Ellis, who entered the military service and died in France on August 13, 1918, of wounds received in battle. She recovered a judgment, from which defendant appeals.

Errors are assigned on rulings of the court relating to the interpretation of a resolution and rule of the defendant suspending a section of its constitution which prohibited the insurance of those engaged in military service and provided that the certificate of a member in entering that service should at once become void. The principal question involved is raised upon defendant's demurrer to plaintiff's reply, and also upon the instructions given by the court, and as the several rulings present the single question they may be considered together.

Ralph Ellis became a member of the Fraternal Aid Union on June 29, 1915, and there was issued to him a certificate for a benefit of $500 in which his mother was named as beneficiary. In February, 1918, he entered the military service, was trained for a brief period and then sent to France, where he landed on June 23, 1918. He was immediately sent to the front and into battle, and died of wounds received in action on August 13, 1918. The constitution of the union, as we have seen, prohibited the insurance of those who engaged in military service, but it appears that assessments were paid to and received by the collection agent of the union after it was known that the insured had been inducted into the army. On August 30, 1918, the advisory board of the union, which it is conceded had authority to suspend or abrogate constitutional provisions, passed the resolution suspending the provision as to members in military service, upon the interpretation of which the right of the plaintiff to the insurance depends. It was headed, "No Slackers in the Fraternal Aid Union," and recited, in effect, that at the beginning of the war, when only men between the ages of twenty-one and thirty-one were called to service, the advisory board did not then deem it advisable to make the whole membership take the risk, but that under the new draft law, under which men were drawn for service in the army and navy between the ages of eighteen and forty-five, the greater part of the membership of the union was involved, and therefore the whole membership should pay the risk. After further stating that the union was anxious and willing to aid and assist the government in every way possible in helping to win the war, the resolution proceeded:

"*Now, Therefore,* Be it resolved by the Advisory Board of the Fraternal Aid Union, in pursuance to the power vested in said board by its constitution, the said board hereby suspends and repeals that portion of its constitution, to wit: That portion of section 56 which classes army officers, soldiers, sailors, naval officers, aëronauts, aviators and those engaged in submarine work as being engaged in prohibited occupations, be and the same is hereby suspended and repealed for a period during the war and as long thereafter as it may be deemed advisable by said Advisory Board; and

"*Be It Further Resolved,* That all the members of The Fraternal Aid Union shall remain on the same basis as to rates for said period, for the purpose of liquidating its mortuary liability and other claims, as they are at the present time."

Ralph Ellis had died of wounds on August 13, 1918, seventeen days before the adoption of the resolution. The question is whether the suspension and repeal of the provision were meant to operate only in the future or intended to cover the period of the war. In the ruling on the demurrer as well as in the instruction the court in effect held that the suspension was retroactive in its operation and that the phrase "for a period during the war" meant the whole time of the war. The general rule is that a by-law or resolution like the one in question is to be interpreted as prospective in operation unless the language employed indicates an intention that it shall act retrospectively. It may be noted that the resolution does not provide that suspension shall be operative hereafter nor from the time of adoption but a specified division of time is named, a period during the war. What is a period during the war? The measuring term "period" is defined as "a stated and recurring interval of time" (Bouvier's Law Dict.), and the definition of "during," the other word of measure, is "In the time of, in the course of, throughout the continuance of." (Cent. Dict.) These definitions carry the idea that the military prohibition had been lifted out of the constitution and that it should have no application in dealings with its members for a specified time and that was throughout the time the nation was at war. It was not to be operative for a part of the period nor for what remained of the period, but for the period as an entirety. In the ordinary meaning of the term it included all of the time from the declaration of war until a declaration of peace. That the union had the past as well as the future in mind, and as tending to show a purpose to give the resolution a retroactive effect, the union made an explanatory statement which was published and sent out in connection with the resolution, that the resolution meant that—

"All members that have in the past paid the extra war premiums will have their extra premiums returned to them or they can apply it on future payments."

If the defendant had declared that in dealing with its members it would treat the military restriction as removed for the period of 1918, it could hardly be contended that the repeal or removal was for a less time than the whole of that year. We are inclined to take the view of the trial court that the resolu-

tion was retrospective in effect and that plaintiff cannot be denied a recovery because of the prohibitive clause in the constitution. If it can be said that there is ambiguity or inconsistency in the resolution, it should be given the construction most favorable to the insured. (*Pyramids v. Drake,* 66 Kan. 538, 72 Pac. 239; *Fire Association v. Taylor,* 76 Kan. 392, 91 Pac. 1070; *United Workmen v. Smith,* 76 Kan. 509, 92 Pac. 710; *Forney v. Insurance Co.,* 87 Kan. 397, 124 Pac. 406.)

Exception is taken to a ruling excluding evidence to the effect that in 1917 the advisory board of the union enacted a resolution providing for the payment of extra premiums by members entering military service, but not required to leave this country. The evidence offered might have been received without error as tending to show the course of action of the defendant on a related matter, but the plaintiff relied alone on the resolution of the union adopted in 1918. It was not claimed that the insured had paid any extra premiums and in no event could the plaintiff claim any rights under the excluded resolution. The exclusion of the evidence cannot be regarded as material error.

There is a contention that under the evidence the court erred in its instructions relating to the payment of assessments. There was evidence to the effect that Mrs. Martindale was the secretary of the lodge to which the insured belonged and the representative of the defendant in the collection of dues and assessments, having her office in the same building with the grand-lodge officers. Previously a fund had been provided by that council to be used for the payment of assessments of out of town members, but that practice had been abandoned several years prior to 1918. Afterwards the secretary made a practice of visiting the places of business or homes of members for the purpose of collecting assessments. In some cases where members were not found or not prepared to pay and had requested Mrs. Martindale to advance the assessments, she had made the payments, but she stated that in no instance did she advance any assessment for any member unless the advancement was requested and that she suspended every person who did not either pay as required by law or arrange with her to advance the money. There was testimony tending to show that Mrs. Martindale had upon request advanced and

paid the assessments for Ralph Ellis for several months, including May, June and July of 1918. There is a dispute as to the payment for July of that year, and it appears that the secretary afterwards marked the membership as suspended for nonpayment of that assessment. Two of the witnesses for the plaintiff stated that she told them she had advanced the assessments for July as well as for May and June, and there is testimony that she told the mother and sister of the insured that the July assessment had been advanced and paid by her and if she was not reimbursed it would be her loss. As against this, Mrs. Martindale testified that the mother of the insured had said that they wished to drop this insurance as Ralph had government insurance, but in relating the conversation she admitted that she had told the mother that she had paid for the months of May, June and July. She further admitted that in a conversation with Ruth Ellis, the sister of the insured, the latter asked her to advance the insurance of Ralph if at any time she failed to come in and make payments on time and that she, Ruth, would repay her the amount advanced. It may be said there is contradiction in the testimony in respect to these matters, but the jury has settled the dispute in favor of plaintiff. Sometime after July, Ruth Ellis remitted to Mrs. Martindale an amount sufficient to cover the assessments for the three months, including July, 1918, all of which the secretary retained. Another reason given by the secretary for treating the July assessment as unpaid was a claim that the August payment of 1916 had not been paid. There was a dispute between the insured and the defendant and the secretary in respect to this payment, the insured insisting that payment had been made. However, there had never been any suspension on account of the alleged nonpayment, and assessments had been paid and received from month to month for a period of two years and no one questioned the standing of the insured in the union. Under the circumstances the claim of the nonpayment of that assessment cannot be a ground of forfeiture and may be eliminated from consideration in the case. According to the testimony of plaintiff, payments were advanced for May, June and July, and the testimony is deemed to be sufficient to support the finding that the July payment was made.

Complaint is made of an instruction to the effect that because of the induction of the insured into military service the rights under the certificate had been forfeited and a recovery by the beneficiary defeated, but that this defense had not been made out and the jury might disregard it. The correctness of the instruction depends on the resolution which has been considered. Its interpretation was a matter for the decision of the court and not the jury, and as already indicated the military service of the insured was not a valid defense and did not prevent a recovery. It is argued that under the statute the secretary had no authority to waive a provision of the constitution as to the occupation of a member or of the laws of the union, but the waiver, as we have seen, was effected by an act of the advisory board and not through any action of the secretary.

There is an objection to an instruction in which the court said in substance that the plaintiff claimed that the defendant through its agent, Mrs. Martindale, had for several years prior to the death of the insured pursued a course of conduct in transacting business with the members of the union as would lead a man of ordinary prudence to believe that the order would not insist upon a rigid and exact compliance with the by-law in that respect, and the court then advised the jury that if the defendant or its agent through a custom or course of conduct led the insured to believe that assessments might be paid and would be received at other times than those specified in the contract or by-laws, the defendant would be estopped to claim a forfeiture because the assessments were not paid at the times stated in the by-laws. The objection that this instruction in effect told the jury that an estopping course of conduct had been proven by the testimony is not warranted. The court stated the claim of the plaintiff and left it to the jury to determine whether the claimed course of conduct had been established by the evidence. The rule of law announced by the court is well within the previous decisions of this court. (*Life Insurance Co. v. Twining,* 19 Kan. 349; *Foresters v. Hollis,* 70 Kan. 71, 78 Pac. 160; *Benefit Association v. Wood,* 78 Kan. 812, 98 Pac. 219.)

An instruction as to the payment by Ruth Ellis for the advanced payment of assessments to the secretary of the union,

and that if there was a dispute, Ruth Ellis had a right to direct where the payment should be applied, is criticized, but it is not deemed to be prejudicially erroneous. The evidence shows that the July assessment had been paid by the secretary. and the dispute as to the application of the payment subsequently made by Ruth did not, in the view taken, affect the right to a recovery of the benefit.

Finding no material error in the record, the judgment of the district court is affirmed.