GRUNDSTEIN, Plaintiff-Appellant, v. SUBURBAN MOTOR FREIGHT, INC., Defendant-Appellee, GRUNDSTEIN, Defendant-Appellant.

Ohio Appeals, Second District, Franklin County.

No. 4680. Decided March 5, 1952.

 

Carrington T. Marshall, I. M. Harris, O. H. Roth, for plaintiff-appellant, and defendant-appellant, Richard H. Grundstein.

Dahlton R. Kincaid, William L. Schmidt, Columbus, for defendant-appellee.

## OPINION

By WISEMAN, J.

This is an appeal on questions of law from the judgment of the Common Pleas Court of Franklin County.

The plaintiff filed an action for a declaratory judgment requesting the Court to declare the rights of the parties arising out of a purported lease entered into between the defendant-company and plaintiff's grantors. The defendant-company filed an answer and cross-petition in which it

prayed for specific performance based upon an option to purchase which was contained in the lease.

In the cross-petition defendant alleged that Richard H. Grundstein is the husband of the plaintiff, Yetta B. Grundstein, and claims. an inchoate dower interest in said premises. Defendant prayed that the husband be ordered to release his inchoate right of dower and for general equitable relief. The trial court entered a decree in favor of the defendant.

A recitation of the facts is necessary for an appreciation of the issues involved. On September 15, 1942, the defendant-company made a written offer to lease certain real estate owned by Berkhemer and White, at an annual rental of Three Thousand Dollars, payable at the rate of $250.00 per month, in advance on the first business day of each month. With respect to the duration of the term of the contract provided:

"for a term of the duration of the present war and six (6) months thereafter, beginning October 1, 1942."

The rental contract contained other provisions usually found in a lease. The last two paragraphs being as follows:

"Lessee to have privilege of purchasing the above described premises at any time during term of occupancy at a consideration price of Twenty-Five Thousand Dollars ($25,000.00) by giving lessor sixty (60) days notice in writing of its intention so to do.

"It is understood that this agreement is to be effective in lieu of formal lease."

The document was signed by the defendant-company by James R. Riley, President, in the presence of two witnesses. On September 17, 1942, Berkhemer and White agreed and accepted the proposition in writing, both signing in the presence of two witnesses. The document was not acknowledged by either of the parties, neither was it recorded. The defendant entered into possession and paid the rent according to the terms of the rental contract, and still retains possession. On October 28, 1947, Berkhemer and White conveyed the premises by general warranty deed to the plaintiff, Yetta B. Grundstein, and on the same date executed an assignment on the original rental contract as follows:

"ASSIGNMENT BY LESSOR

For value received, the undersigned hereby sells, assigns and transfers to Yetta B. Grundstein and assigns, all interest in the within lease and the rents thereby secured. Signed, Oct. 28, 1947

Wm. F. Berkhemer
H. R. White"

The defendant paid rent to the plaintiff from November 1, 1947, up to January 31, 1950, after which the rent was tendered to plaintiff.

The events which provoked this litigation are as follows: On December 6, 1949, plaintiff served on the defendant a notice to leave the premises which was based on her conclusion that the rental contract had terminated. On December 27, 1949, plaintiff notified the defendant in writing that the rent on and after February 1, 1950, would be $400.00 per month. On January 5, 1950, the defendant gave notice in writing to the plaintiff that it had elected to exercise and accept the option to purchase the real estate for $25,000.00. On February 16, 1950, the plaintiff refused in writing to recognize the exercise of the option and refused the tender of the rent at the rate of $250.00 per month. The action was instituted February 21, 1950. On March 31, 1950, the defendant paid into court the sum of $25,000.00, the option price mentioned in the rental contract, which amount is still being held by the Clerk of Courts pending the outcome of this litigation.

The trial court decreed:

(a) That there was a valid rental contract subsisting between plaintiff and defendant;

(b) That the meaning and effect of the provision "for duration of the present war and six (6) months thereafter" as used in the contract, describes the term of the lease, which became effective October 1, 1942, and does not terminate until six months after there has been a formal declaration of peace between the belligerent nations;

(c) The option to purchase could be exercised by defendant at any time during the term of the lease, viz.: until six months after a formal declaration of peace between the belligerent nations;

(d) That defendant had the right to exercise the option on January 5, 1950;

(e) That defendant was not a month to month tenant but occupied said premises under a valid and subsisting lease.

The Court further found that the defendant duly exercised the option to purchase, including the proper tender of the purchase price, but that Yetta B. Grundstein and Richard H. Grundstein, her husband, have failed and refused to convey said premises to defendant. The Court further decreed that Yetta B. Grundstein and Richard H. Grundstein, who was ordered to join in said conveyance for the purpose of releasing his inchoate right of dower in said premises, shall execute and deliver to defendant a good and sufficient deed for said premises and that upon their failure so to do within ten days from date of entry, the decree shall operate as such con-

veyance. The Court ordered the $25,000.00 placed on deposit with the Clerk of Courts delivered to Yetta B. Grundstein upon the delivery of the deed or the recording of the decree by the County Recorder. The Court further found that Yetta B. Grundstein had retained a check for $250.00 tendered by the defendant for the rent for the month of February, 1950; and that there is due plaintiff the sum of $50.00 as rent for the period from March 1, 1950, to March 6, 1950, for which sum the Court rendered judgment against the defendant.

The first question raised involves the validity and the legal effect of the rental contract or lease. We have no difficulty in finding that the rental contract was intended by the parties to be a lease. The last paragraph of the contract provides that the agreement is to be effective in lieu of a formal lease. At the outset it is well to state that the issues presented must be determined upon equitable principles. "Equity looks to the substance, and not to the form."

The rights of the parties under the contract and the equitable relief granted would be the same whether the Court denominated the document a lease or a rental contract. A defectively executed lease is treated in equity as a contract to make a lease. **Lithograph Building Company v. Watt, 96 Oh St 74.** In a declaratory judgment action, and especially where defendant in its cross-petition prays for specific performance, the rights of the parties will be declared, whether in law or equity. **R. K. O. Distributing Corporation v. Film Center Realty Company, 53 Oh Ap 438, 449.**

What was the duration of the term? The lease provided: "for a term of the duration of the present war and six (6) months thereafter beginning October 1, 1942." The Court will take judicial notice that the war referred to is World War II. It is agreed by counsel for both plaintiff and defendant that the words "duration of the present war" are ambiguous. Plaintiff contends that the words "duration of the present war" mean the continuation of hostilities and that the parties intended to give this meaning to the words used. Hostilities ceased on August 14, 1945, and six months thereafter would be February 14, 1946, which is the date the plaintiff claims the lease terminated. If the lease terminated February 14, 1946, the exercise of the option came too late.

Where there is an ambiguity parol evidence is admissible to show the intention of the parties. **Hoover v. Sandifur, 25 Wash. (2d) 791, 171 P. (2d) 1009, (1946), 168 A. L. R. 170.** Under this rule testimony was taken to show the intention of the parties at the time the lease was executed. The evidence shows that the premises then occupied by the defendant-company were taken over by the United States Gov-

ernment under a lease, the term of which was "for duration of the war and six (6) months thereafter." The defendant-company being compelled to vacate desired to secure other premises to conduct its business. The president of the defendant-company wanted a lease with respect to duration similar in its terms to the lease taken by the Government of the premises which it then occupied. This information was conveyed to the broker who drew the lease here involved. The agents of the defendant-company clearly stated that it wanted a lease "for the duration of the present war and six (6) months thereafter." The defendant-company wanted this provision in the lease for the very obvious reason that it desired to occupy the new premises as long as the United States Government occupied the premises which it leased. The words were deliberately chosen to accomplish a definite purpose. The evidence shows that the broker was the agent for the lessors.

The fact that the United States Government relinquished possession of the premises formerly occupied by the defendant sometime prior to the time that difference arose between the parties hereto, is irrelevant and cannot be considered in determining the intention of the parties at the time the contract was executed. The United States Government might still be occupying the premises under the terms of its lease. Malbone Garage, Inc. v. Minkin, 272 App. Div. 109, (1949), 72 N. Y. S. (2d) 327, affirmed without opinion in 297 N. Y. 677. On page 15 of the record one of the lessors White, testified as follows:

"Q. Do you remember why those words were used in the lease? * * *

"WITNESS: I would say because they wanted the property six months after the war, that is what my idea of the thing was, that is to be able to move out."

The plaintiff contends that the parties intended to enter into a temporary lease and that the words under construction were intended to give the defendant the right of occupancy during hostilities and for six months thereafter. It does not appear that the defendant-company ever intended to give this meaning to the words used. The evidence bearing on the intention of the parties supports the contention of the defendant, and the trial court could not on the basis of this testimony reasonably conclude that the parties intended to give the words "duration of the present war" any meaning other than what they legally connote. On the basis of the evidence presented the trial court was justified in concluding that the intention of the parties was to use these words in their technical legal sense. Ellis v. Fraternal Aid Union, 108

Kan., 819, (1921), 197 P. 189, 190. Furthermore, it is a well established principle of law that where words are susceptible of more than one meaning, the courts will adopt that interpretation which the parties themselves have placed upon them by their subsequent acts. **Courtright v. Scrimger, et al, 110 Oh St 547; Cincinnati v. Gas Light and Coke Co.** 53 Oh St 278; Fagan v. Ulrich, 166 App. Div. 342, (1915), 152 N. Y. S. 37. In the application of this principle of law it is well to observe that over eighteen months after February 14, 1946, the date on which the plaintiff claims the lease terminated, the lessors in a letter to the defendant-company recognized the validity of the lease and that it still was in effect by requesting the defendant-company to do some work and stated: "This is your responsibility as outlined in our contract. We are sure you see the value of having the needed work finished before the winter months arrive." Also, in the assignment of the lease, dated October 28, 1947, the lessors considered the lease still in effect.

In a legal sense the existence of World War II continues until terminated by ratification by peace treaties or proclamation of competent authority. Ellis v. Fraternal Aid Union, supra; Vol. 56 Am. Jur., page 142, Sec. 13. (Cases cited)

A research discloses that the courts in other jurisdictions have given different interpretations to the words "duration of the present war." Vol. 13, Words and Phrases, Permanent Edition, P. 641, 1951 Cumulative Supplement, P. 168; Vol. 168 A. L. R. 173, and 1951 A. L. R. Blue Book, P. 683. However, an examination of these authorities will show that the courts always attempted to ascertain the intention of the parties and give effect thereto. In cases where the court construed the words "duration of the present war" or "duration of the war" to mean the continuation of hostilities, such interpretation was based on some piece of evidence which indicated that the parties intended to give this meaning to the words used. On this issue we are in accord with the judgment of the trial court.

Thus far we have discussed the provisions of the lease and the rights of the parties from the standpoint of a legally executed lease. The lease in the instant case did not fall within the provisions of §8517 GC, which provides that leases for a term not exceeding three years are not required to be executed as provided in §8510 GC. The defendant seeks relief during a period beyond the three years. **People's Building Loan & Savings Co. v. McIntire, et al., 14 Oh Ap 28, 31.** Sec. 8510 GC provides that a lease must be in writing, signed, attested by two witnesses and acknowledged by lessors. The lease is defective in that it was not acknowledged by the lessors.

What are the rights of the parties under a defectively executed lease where the term exceeds three years? In Ohio the principle is well established that at law if the lessee takes possession under a defectively executed lease and pays rent, a tenancy is implied. The duration of the term of the tenancy which is implied depends upon the provisions for the payment of the rent. **Wineburgh v. Toledo Corporation, 125 Oh St 219, 222; Lithograph Building Company v. Watt, 96 Oh St 74; Toussaint Shooting Club v. Schwartz, et al., 84 Oh St 440; Baltimore & Ohio Railroad Company v. West, 57 Oh St 161; R K O Distributing Corporation v. Film Center Realty Company, 53 Oh Ap 438, 449;** Shell Petroleum Corp. v. Jackson, 77 F. (2d) 340, (1935, U. S. C. C. A., 6th Circuit); J. J. Newberry v. Marshall, 125 F. (2d) 973, (1942, U. S. C. C. A., 6th Circuit); **Vol. 24 O. Jur. Sec. 54, pages 789, 790.** See also Vol. 6 A. L. R. (2d) pages 685, 695.

If the rent is reserved annually, although payable in monthly installments, as in the instant case, a tenancy from year to year is implied. **Baltimore & Ohio Co. v. West, 57 Oh St 161, 165.** This principle of law rests on the theory that in law a defective lease does not create a legal estate. A tenancy is implied and all provisions of the lease are effective except the duration of the term. **Lithograph Building Company v. Watt, 96 Oh St 74, 88; Baltimore & Ohio Railroad Company v. West, 57 Oh St 161, 165; The People's Building, Loan & Savings Co. v. McIntire, et al, 14 Oh Ap 28, 32.** Thus, at law the defendant held a tenancy from year to year. On October 1, 1949, the defendant entered a new year and on January 5, 1950, when defendant exercised its option, it did so "during term of occupancy," as provided in the rental contract. The plaintiff, however, strongly urges that the defendant held under a tenancy from month to month, or at best from year to year and that relief can be granted only under such a tenancy. This result would obtain at law. Even at law under a tenancy from year to year the defendant properly exercised the option to purchase; but we are in a court of equity, where equitable principles must be applied and where a more complete remedy is afforded. **R K O Distributing Corp. v. Film Center Realty Co,. 53 Oh Ap 438, 446; Hennessy v. Moreland, 90 Oh Ap 178.**

The plaintiff strongly relies on **Wineburgh v. Toledo Corporation, 125 Oh St 219,** and claims that the principle announced in that case controls and that defendant holds under a monthly tenancy. We do not agree. In that case the action was at law and not in equity; the rent was reserved monthly and not annually as in the instant case. The

court recognized this distinction in its opinion when it said on page 223 the following:

"Whether reformation or other equitable remedy is available to the landlord under this or similar circumstances, it is not necessary to decide in this action, for that question is not here presented."

In equity part performance takes the instrument out of the operation of the statute. Possession taken under the lease constitutes part performance. The trial court properly invoked its equity powers, in decreeing that in equity the defendant was occupying the premises under a valid and subsisting lease which did not terminate until six months after a formal peace treaty had been signed by the belligerent nations or a formal proclamation by a competent authority had been made ending the war.

In the instant case the defendant did not specifically pray for a reformation of the rental contract, neither did the Court decree a reformation, although the facts would warrant such reformation. If a reformation had been asked for and decreed it could only have affected the acknowledgment. No reformation was required with respect to the terms of the lease. In certain instances, and this is one, a reformation of the instrument is not a prerequisite to granting equitable relief thereunder. The **Globe Insurance Company v. Elizabeth W. Boyle, et al., 21 Oh St 119, 130.** The fourth syllabus is as follows:

"When in such case the record shows that the petition and the facts found by the court, warrant an order of reformation, and that, without such formal order, the proper final judgment has been rendered, it is not error in a reviewing court to affirm the judgment."

The court on page 131 states that the failure to grant reformation was not prejudicial; it was only a matter of form, for which the judgment cannot be reversed.

We hold that where the defect in the lease consists in the failure of lessors to acknowledge the lease, as provided in §8510 GC, and where the provisions and terms of the lease do not require reformation, a reformation of the lease with respect to the acknowledgment is not a necessary prerequisite to granting equitable relief thereunder.

The plaintiff contends that she is not responsible for the alleged contract entered into between the defendant-company and Berkhemer and White on the ground that she assumed no responsibility. The defendant took possession under the lease and is still in possession. The plaintiff purchased the property from Berkhemer and White while the defendant was in open and notorious possession. The

plaintiff took an assignment of the interest of Berkhemer and White in the lease, with knowledge of the lease, its terms, and possession by the defendant. Any right which defendant could assert against Berkhemer and White may be asserted and enforced against the plaintiff. **Kemp v. Feldman, 84 Oh Ap 154; Dunkel v. Hedges, 15 Oh Ap 259; Schloss v. Brown, et al., 13 Oh Ap 294.** In the latter case the Court on page 296 holds:

"The lease to Schloss, though not attested as required by §8510 GC, was good between the parties as a contract. An imperfectly executed lease may operate to create an equitable estate in the lessee, if it be plainly shown that the instrument was intended as a lease and was accepted and treated as such by the lessee." (Cases cited)

\* \* \* \*

"If Brown was not a bona fide purchaser, he would take the property subject to the equitable right which is now admitted to have existed against Holzberger. It is the settled rule in Ohio that a purchaser of land which is in the actual possession of the third party, known to him, is chargeable with notice of any equitable title of the party in possession whatever the same may prove to be." (Cases cited)

On page 297 the court finally held:

"The undisputed evidence shows that Brown was aware of the possession of the premises by Schloss. He, therefore, acquired the ownership from Holzberger, subject to the equitable rights of Schloss arising under the unrecorded contract of lease."

See also **Vol. 24 O. Jur., page 747, Sec. 13.**

The contention is made that the trial court erred in rendering judgment against Richard H. Grundstein requiring him to release his inchoate right of dower. In the cross-petition, Richard H. Grundstein, husband of plaintiff, was made party-defendant, although erroneously mentioned in the record at several places as a party-plaintiff. The defendant, Richard H. Grundstein, filed a waiver of service of summons and entered his appearance, but filed no answer. The allegation in the cross-petition is that Richard H. Grundstein is the husband of the plaintiff, Yetta B. Grundstein, and claims an inchoate dower interest in said premises. A part of the prayer of the cross-petition is that Richard H. Grundstein be ordered to execute the deed with his wife releasing his claim for dower. There are no provisions in the lease, nor in the option which would indicate that the lessors were married and agreed to convey free of dower and much less with respect to the plaintiff as the grantee and assignee of

the lessors. The defendant, in its cross-petition, did not attempt to make this matter an issue and no evidence was taken thereon. The allegation contained in the cross-petition to the effect that Richard H. Grundstein was the husband of the plaintiff and claimed his right to inchoate dower is in accord with the facts.

Was it proper to enter a decree against Richard H. Grundstein requiring him to join in a deed with his wife for the purpose of releasing his inchoate right of dower? We do not think so. Inchoate right of dower is a contingent interest in the land of the consort and is of substantial value. The right to inchoate dower cannot be taken away nor barred by any act of the consort. Sec. 10502-1 GC; Vol. 14 O. Jur., page 679, Sec. 66. In the instant case the husband has the same right to inchoate dower as the wives of the lessors would have had if the lessors were married. The fact that the husband was made a party to the action is of no legal consequence; no decree can be entered against the husband unless on the whole record there is some support for it. Neither the pleadings nor the evidence supports the decree. The **People's Savings Bank Co. v. Parisette, et al., 68 Oh St 450; Jewett v. Feldheiser, 68 Oh St 523, 530; Urbanski v. Szelaszkiewicz, 15 Oh Ap 4; Caple v. Crane, et al., 10 Oh Ap 461;** Edmund v. Boring, et al., 30 O. C. A. 238; **Koester v. McKinney, 17 Abs 441.** In Koester v. McKinney, (opinion by Judge Hornbeck) the wife joined the husband in a mortgage which was foreclosed and in the action the wife was made party-defendant. It was held that she may assert her inchoate dower against the mechanic's liens holders who were made party defendants, even though she filed no answer to the petition. In Edmund v. Boring, it was held that where the husband did not sign a contract of sale with his wife, the owner, the land will be ordered transferred in a suit for specific performance, subject to the husband's right of contingent dower. In the Urbanski case, it was held that where an option to purchase is not signed by the wife of the owner, and the purchaser seeks specific performance, subject to the wife's dower, a decree will be granted. In the case of Caple v. Crane, the court found from the evidence that the option to purchase provided for conveyance free of dower, and the wives of the owners not being made parties, the cause was remanded. The court on page 467 states the question for determination as follows:

"This presents an important and somewhat difficult question, namely: Shall a decree of specific performance be entered against the defendants requiring them to execute a

deed in which their wives shall join; or, if the wives refuse to join, a decree of specific performance against the husbands, with an abatement from the purchase price sufficient to cover the present worth of the contingent right of the dower of the wives?"

In discussing the nature of the remedy afforded to the purchaser and the character of the decree to be entered the court discussed at length and followed the case of The People's Savings Bank Co. v. Parisette, et al., supra. The court finally held that the wives of the owners not being made parties to the suit, a decree for specific performance requiring conveyance free of dower could not be entered and remanded the case to the lower court. The court in The People's Savings Bank Co. v. Parisette, et al., supra, had before it a state of facts similar to those presented in the instant case and discusses the character of the decree which may be entered. We quote from the court's opinion, beginning on page 460:

"What was the contract specific performance of which plaintiff demanded, and what the breach, if any? The parties were the vendor, the husband, and the vendee, the plaintiff. The paper itself carries the information that it was when drawn contemplated to be executed by some one other than the vendor, and since the plaintiff was aware that he had a wife living, the inference is natural that she was the person whose signature had been expected. The paper further showed that she had not signed, and the fact found is that she had made no agreement to sign or sell the property, or release her inchoate right of dower. Furthermore, the absence of her signature would suggest a refusal by her. The Company knew, therefore, that it was dealing with the husband alone as to his right and title in the property, it knew that the wife could not be compelled to sign, and that, therefore, the contract was impossible of specific execution if construed to include her dower. It knew that it was accepting a contract which on its face did not purport to sell any interest but that of the husband, and especially did not purport to sell or agree to convey any inchoate dower of the wife. In this situation of affairs the Company chose to agree to pay the stipulated price for just what the option purported to sell. No fraud, or overreaching, or mistake of any kind is charged. The vendor is ready to convey just what the stated terms of his contract obligate him to convey. How can the Company reasonably demand that the court import into the contract a stipulation to convey by a deed containing a covenant against this dower right, when no agreement of that character, nor respecting incumbrances of any kind, is ex-

pressed, and when in all probability, had such a demand been made of the vendor, he would have refused to comply with it? We think it cannot. The effect of the construction contended for by counsel would be either to attempt to arrive at a sum to be deducted absolutely by a process admittedly speculative, or to suspend the payment of a considerable portion of the purchase money to the grantor during the joint lives of himself and his wife, which, it seems to us, could never have been within the contemplation of the parties when this optional contract was signed. Plaintiff was in a court of equity pressing an inequitable demand. We think it was properly refused. On the plaintiff's own construction of the option the Company is in the attitude of one who takes the promise of another to do that which it is known he cannot perform except by the concurrence of a third person. Such purchaser contracts with full notice of the uncertainty attending the seller's ability to perform, and, not having been misled to his injury, cannot now ask the extraordinary aid of a court of conscience in repairing such loss. if any, as he has sustained by the vendor's failure to complete his contract."

See, also, **Barnes v. Christy, 102 Oh St 160, 174;** Vol. 46 A. L. R. 748, 756. In the Parisette case it must be observed that the purchaser who instituted the action sought a decree against the wife in the same manner as the purchaser in the instant case seeks a decree against the husband. In that case the wife did not sign the contract of sale with the husband who was the sole owner. The lower court decreed that the plaintiff was not entitled to relief against the wife and that the plaintiff was not entitled to a deed from the husband, except upon payment of the entire purchase money provided for in the option. In the application of the law laid down in The People's Savings Bank Co. v. Parisette, et al., to the facts in the instant case, we are of the opinion that the defendant is not entitled to a decree against the husband. Richard H. Grundstein. On this issue the judgment is reversed.

Plaintiff contends that the trial court erred in rendering a money judgment for $50.00 for a portion of the month of March, 1950. The trial court found that the plaintiff had retained a check for rent for the month of February, 1950, and also rendered judgment against the defendant for $50.00 for rent from March 1, to March 6, 1950. The sixty day period stated in the lease after giving notice of the exercise of the option expired March 6, 1950. Apparently the court concluded that defendant owed rent up until the expiration of

the sixty day period at the termination of which the exercise of the option became effective. We are in accord with the judgment of the trial court in finding that the defendant owed rent up until March 6, 1950, at the rate stipulated in the lease and was not obligated to pay rent thereafter.

In her petition, the plaintiff did not ask for consequential or coercive relief. Such additional relief may be given if properly pleaded. **American Life & Accident Insurance Company of Kentucky v. Jones, Admr., 152 Oh St 287, 297.** Whether the trial court could grant coercive relief by entering a money judgment is not properly presented to this Court for determination. On this question the plaintiff cannot be heard to complain as the judgment was in her favor and she is not prejudiced thereby. The defendant did not file a cross-appeal.

The contention of plaintiff that it would be inequitable to enforce specific performance in a period of advancing values after a lapse of eight years is not tenable. The fact that the property has increased or decreased in value since the contract was executed will not of itself warrant a refusal to enforce its terms. Thompson on Real Property, Vol. 3, page 500, Sec. 1335.

We have considered all errors assigned, although not separately discussed, and find no errors assigned well made, except Number ten which relates to the judgment erroneously entered against Richard H. Grundstein. On this issue the judgment is reversed. Because of the unsatisfactory condition of the record on this question the cause will be remanded for further proceedings according to law.

HORNBECK, PJ, MILLER, J, concur.

## ON APPLICATION FOR REHEARING

No. 4680. Decided March 22, 1952.

By THE COURT.

Application for rehearing is denied.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.